**HEMENWAY COMPANY, INC.,**
**Appellant,**

v.

**SEQUOIA PACIFIC REALCO, Appellee.**

**No. 16264.**

Court of Civil Appeals of Texas,
San Antonio.

Sept. 25, 1979.

Rehearing Denied Oct. 31, 1979.

Joel W. Westbrook, Trueheart, McMillan, Westbrook & Hoffman, Herman Glosserman, Glosserman & Alter, San Antonio, for appellant.

Gary C. Johnson, Foreman, Dyess, Prewett, Rosenberg & Henderson, Houston, Thomas H. Crofts, Jr., Norman L. Nevins, Groce, Locke & Hebdon, San Antonio, for appellee.

## OPINION

MURRAY, Justice.

This suit was brought by Hemenway Company, Inc., appellant, against Sequoia Pacific Realco, appellee, for breach of contract. Appellant, an equipment supplier, sued appellee, landlord of a restaurant premises, for breach of appellee's obligation to require its new tenant, Ollie Otten, to assume a specific equipment lease with appellant.

Appellee built a restaurant building and leased it to Vintage Associates, which was to furnish and operate the restaurant. Appellant leased to Vintage Associates the necessary furniture and equipment to operate the restaurant after appellee had signed a "Landlord's Waiver and Agreement Re Fixtures" (LWA). Clause five of the LWA provided that if Vintage Associates defaults resulting in a termination of the lease appellee agrees to require any proposed new tenant, as a condition of renting, to assume Vintage's equipment lease obligation to appellant.

For financial reasons Vintage closed the restaurant and abandoned the building, at which time some of the furniture and equipment covered by the lease was missing due to theft or breakage. Thereafter, appellee leased the premises to Ollie Otten without requiring Otten to assume Vintage's equipment lease obligation to appellant.

The jury returned findings that (1) the appellee had not breached its contractual obligation; (2) appellant sustained no damages; and (3) appellant waived performance by appellee of any obligation to require its tenant, Ollie Otten, to assume the specific equipment lease. The trial court entered judgment for the appellee and appellant has perfected its appeal to this court.

■ Appellant attacks the jury findings on both the legal sufficiency and factual sufficiency of the evidence. If the record contained some evidence of probative force in support of the jury verdict then the evidence is legally sufficient. *See Flavin v. Flavin*, 523 S.W.2d 94, 95 (Tex.Civ.App.— Houston [1st Dist.] 1975, no writ). In considering the factual sufficiency of the evidence we consider and weigh all of the evidence in the case and will set aside the verdict and remand the cause for a new trial only if we conclude that the verdict is so against the great weight and preponderance of the evidence that it is manifestly unjust. *In re Estate of King*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951) (per curiam).

Shortly after Vintage Associates closed the restaurant in September of 1976, Ollie Otten contacted appellee and indicated that he was interested in leasing the restaurant. On October 20, 1976, Otten sent a telegram to Sequoia which read: "Agree to your contract proposal for building at 1011 N.E. Loop 410 providing we receive key for building for inspection purposes today and with these agreements as soon as possible." That same day Sequoia contacted Mr. Ralph E. Tozier, the representative of appellant, and told him that it had a prospective tenant for the building whose name was Otten. Mr. Tozier testified as follows:

Q. Did you make any statement to whoever called you about the situation at all?

A. I think I said I would get in touch with Otten.

Q. Did you get in touch with Mr. Otten?

A. I did.

Q. Did you telephone him that day?

A. Yes.

Q. What was your discussion with Mr. Otten?

A. I told Mr. Otten that I would come down and see him the following day if that was convenient.

Q. And was that convenient?

A. It was.

Q. And did you come to San Antonio on October 21?

A. I did.

Q. And what was the nature of your meeting with Mr. Otten on the 21st of October?

A. On the 21st of October I went to Mr. Otten's former place of business on San Pedro. He then took me over to the Yesterday's building. He took out his key and we went inside and took a tour of the building . . . .

Q. All right. At that time had he entered into a lease with Sequoia?

A. To the best of my knowledge, no.

Q. What was your discussion concerning the equipment on your dealing with him at that time?

A. My discussion involved us having a lease which I later forwarded to him.

Q. All right. And did you discuss the terms of the lease with him on that occasion?

A. Basically in general terms.

Q. All right. And on that occasion did you tell him that he would have to assume the lease . . . between Hemenway and Vintage?

A. I did not.

Q. You did not?

A. No.

Q. Did you mention to him that there was a requirement between Hemenway and Sequoia . . . that if he leased that property that he would have to assume the Vintage-Hemenway lease?

A. I did not.

During the October 21 meeting Tozier proposed to Otten a lease of the equipment for

24 payments at $2,250 per month, followed by 96 payments of $2,650 per month plus one-half of one per cent of the net sales of the first $500,000.00 annual net sales and one per cent of all amounts over $500,000.00. In terms of total dollars this sum would be greater than the amount realized from an assumption of the Vintage lease.

After Tozier's visit with Otten in San Antonio he returned to Louisiana, drafted the proposed equipment lease, and forwarded it to Otten under cover of letter dated October 28, 1976, with copy to Sequoia.

On November 1, 1976, Sequoia and Otten entered into a written building lease covering the restaurant building. This lease did not include an assumption of the Vintage-Hemenway equipment lease.

Tozier negotiated with Otten until February of 1977 when it became apparent that Otten was not going to lease the equipment. Prior to this time no mention had been made of the LWA to Otten or to appellee. Appellant filed this lawsuit alleging that appellee had converted the restaurant furniture and equipment, and, in the alternative, had breached the LWA. During the trial appellant took a nonsuit on the conversion count and went to the jury on the breach of contract count.

Appellant's assault on the finding of waiver in favor of appellee is based on the following argument: 1) the contract between appellee and Otten was consummated on October 20, 1976; 2) thus, appellee breached the LWA on that date; 3) there can be no waiver after a breach of contract; 4) therefore, appellant's conduct subsequent to October 20 cannot be considered as a waiver of its rights under the LWA.

█ In support of its contention that the contract between appellee and Otten became binding on October 20, appellant relies on Otten's mailogram of that date to appellee. The mailogram stated that Otten agreed to Sequoia's proposal with certain conditions. The record, however, does not indicate what the proposal was or whether the conditions were acceptable to Sequoia. Although a contract may be created prior to the execution of a formal document, the intent of the parties to make a binding agreement is the ultimate issue. *See Scott v. Ingle Brothers Pacific, Inc.*, 489 S.W.2d 554, 555–56 (Tex.1972). There is evidence that appellee did not intend for there to be a lease effective on October 20, 1976. At trial there was no dispute about the effective date of the lease agreement. In fact, Tozier testified that Otten was not Sequoia's tenant between October 20 and November 1. Furthermore, the trial court, without objection, submitted the case on the theory that the LWA was either breached or not breached when the written lease was executed on November 1. We agree with appellee that the only contract shown by the record between appellee and Otten was the written contract of November 1, 1976. Thus, appellant's assertion that there can be no waiver after breach, even if valid, would not preclude consideration of its conduct between October 20 and November 1, 1976.

█ We have examined the record in this case and hold that there is sufficient evidence to sustain the jury findings of waiver. Intentional conduct that is inconsistent with the claim of a right constitutes a waiver. *United States Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex.1971). Appellant's right to insist on appellee's performance of its obligations under the LWA came into existence, if at all, on October 20 when appellant learned that Otten was a prospective tenant. The jury could reasonably infer that appellant by its conduct between October 20 and November 1 waived any obligation of appellee to refrain from leasing to Otten without requiring an assumption of the Vintage obligation.

Appellant next asserts that the trial court erred in overruling its obligation to the definition of waiver and in refusing appellant's requested definition of waiver. The definition of waiver as given by the court read: "The giving up or relinquishment of some known right or such conduct as warrants an inference of the giving up or relinquishment of such right. A right is waived

where a person dispenses with the performance of something which he has a right to exact or demand." The trial court refused appellant's requested definition of waiver reading as follows:

A waiver, involving as it does that idea of intention, may be expressed or implied. Waiver may be shown by such conduct as will warrant the inference of the relinquishment of a known right; however waiver by implication will be applied only to prevent fraud or inequitable consequences, and, to establish an implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part. Estoppel arises whenever a perpetration of a wrong or fraud has misled another to his injury.

Rule 274 of the Texas Rules of Civil Procedure requires that objections must state clearly and specifically the grounds of the objections and be sufficient to direct the attention of the trial court to the matter of which the party complains. Appellant objected[1] to the court's definition of waiver because it did not contain the elements of waiver as embodied in its requested definition.

Appellant asserted before the trial court and before this court that the definition of waiver which was refused was taken from the law as expressed in the case of *Smith v. Northwest National Bank*, 403 S.W.2d 158 (Tex.Civ.App.—Texarkana 1966, writ ref'd n. r. e.). The contention that acts amounting to an estoppel are necessary in order to establish an implied waiver of a legal right is no longer tenable. Subsequent to the *Smith* case the supreme court held that "[w]aiver need not be . . . based on estoppel." *United States Fidelity & Guaranty Co. v. Bimco Iron & Metal*

*Corp.*, 464 S.W.2d 353, 358 (Tex.1971) (overruling prior cases). Although the court did not expressly overrule *Smith*, several opinions which contained similar definitions of waiver were expressly overruled. Appellant's requested definition of waiver did not embody a correct rule of law; therefore, the trial court properly overruled the objections. *See Moore v. Savage*, 362 S.W.2d 298, 299 (Tex.1962) (per curiam).

In view of our holding, we think it unnecessary to consider appellant's other points of error. The judgment of the trial court is affirmed.

---

1. "Now, comes the Plaintiff after both sides have closed and before the Court has read its charge to the jury and objects to that part of the main body of the Court's charge which defines the term waiver for the reason that same is incomplete and not requiring that before the jury can find implied waiver, that the conduct relied upon showed implied waiver must be such that it would apply only to prevent fraud or inequitable consequences and must be clear showing the purpose or acts amounting to estoppel on its part, and we submit to the Court what we believe is a fair statement of the law taken from the *Smith* case which we cited the other day."