ALFORD, MERONEY & COMPANY, a
Texas Partnership, Appellant,

v.

Don L. ROWE, Appellee.

No. 9228.

Court of Civil Appeals of Texas,
Amarillo.

May 29, 1981.

Rehearing Denied July 31, 1981.

Culton, Morgan, Britain & White, Don L. Patterson and Bill R. Moss, Amarillo, for appellant.

Templeton & Garner, Robert E. Garner and Charles R. Watson, Jr., Amarillo, for appellee.

COUNTISS, Justice.

The central issue in this breach of contract suit is whether, as the jury found and the judgment decreed, appellant Alford, Meroney & Company, a Texas partnership, (hereafter "the partnership") waived its right to enforce a penalty provision against appellee Don L. Rowe (hereafter "Rowe"), when he withdrew from the partnership and entered into competition with it. We affirm.

The partnership is a public accounting firm with offices in a number of Texas and New Mexico cities. Rowe became a partner in 1971 as the result of a merger between the partnership and another accounting firm in which Rowe was a partner. For several years thereafter, Rowe was the partner in charge of the Amarillo office, a position carrying various administrative duties in addition to the usual accounting duties of the partners, and paying additional compensation for those duties. Rowe also served on the partnership's executive committee until 1975. Because of internal dissatisfaction with Rowe's administration, he was removed by the executive committee as partner in charge of the Amarillo office on July 1, 1977, and another partner was given the position. Rowe remained a partner but was not, thereafter, the "partner in charge."

At or about the time of his removal as partner in charge, Rowe apparently began to consider withdrawing from the partnership. He discussed this possibility several times with other partners between June and November of 1977. On November 22, 1977, he wrote a letter to the partnership's managing partner, in which he indicated his

desire to withdraw from the partnership. The portions of the letter pertinent to this case are as follows:

> After careful and thoughtful consideration and review of the past two year period, I have concluded that the best course of action for myself and for the firm is for me to resign and withdraw from the firm. In the rest of this letter I will attempt to outline as briefly as possible for our further discussion the basic terms of this resignation and withdrawal. The most important part, of course, as you and I discussed when you were in Amarillo, is that I must continue in the practice of public accounting either in my own firm or be [sic] associating with another firm here in Amarillo.

> I purpose [sic] that it would be the same as in Hahn's withdrawal that I be permitted to withdraw under the terms of the partnership agreement with the exceptions as to the penalty provisions. In other words, that I would be permitted without penalty to enter into the practice of public accounting in competition with Alford, Meroney and Company whether by myself or in association with others. To that end, all of the clients that are currently under my number and those clients that are under other partners numbers in the Amarillo office that were originated by me and so choose upon notification by joint letter of my resignation, withdrawal and continuation of practice to become my clients would in fact become the clients of my continuing practice without penalty or payment to the firm as required by Paragraph 12(c) of the Partnership Agreement. It would be further agreed that any clients that choose to stay with Alford, Meroney and Company would continue to be the clients of Alford, Meroney and Company without consideration as to who was the originating partner of those clients.

> \*  \*  \*  \*  \*  \*

I think that these matters on my part could be completed no later than December 31, 1977, so that I could be effectively withdrawn from Alford, Meroney and Company on or before that date.

> \*  \*  \*  \*  \*  \*

The "Paragraph 12(c)" penalty discussed in the letter is the provision in the partnership agreement which imposes certain financial penalties on a withdrawing partner who goes into competition with, and takes clients of, the partnership.[1]

Various discussions ensued thereafter between Rowe and several members of the partnership but no express agreements were reached. Rowe left the partnership on December 31, 1977, established his own practice and took a substantial number of partnership clients with him. A few days later, on January 4, 1978, the partnership filed suit against him seeking various items of relief including enforcement of and damages under paragraph 12(c).

All matters in controversy were resolved prior to trial except the paragraph 12(c) dispute. That issue was tried before a jury, which found, in response to special issue number 6, that the partnership had waived its right to collect the paragraph 12(c) payment. The trial court rendered a take-nothing judgment against the partnership and it duly perfected this appeal.

In this court, the partnership challenges the factual and legal sufficiency of the evidence to support various jury findings and contends it was entitled to judgment because of other jury findings. Because our resolution of the first and second points of error wherein the partnership challenges the factual and legal sufficiency of the evidence to support the waiver finding is determinative of this appeal, we will discuss only those points in detail.

The partnership's first point of error, by which it contends there is no evidence to support the jury's finding of waiver, presents a question of law that requires the

---

1. Paragraph 12(c) sets out a detailed procedure for valuing each client taken by a withdrawing partner within a three-year period after withdrawal from the partnership. The details of the paragraph are not material to the issues before us, but if the provision is enforced against Rowe he will owe the partnership a substantial sum of money.

appellate court to consider only the evidence and inferences tending to support the finding under attack and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

The partnership's second point of error, by which it contends the evidence is insufficient to support the jury's finding of waiver, invokes a broader standard which requires this court to consider all of the evidence in order to determine whether the evidence supporting the finding is so weak, or the evidence to the contrary so overwhelming, that the finding should be set aside and a new trial ordered. *Id.* at 823. In considering an "insufficiency" point, however, we are particularly cognizant of the role of the trier of fact. The trier of fact has the opportunity to observe the demeanor of the witnesses on the stand and to judge their credibility. It determines the weight to be given their testimony and resolves conflicts in the testimony of one witness with another. It can believe all of a witness' testimony, none of it or part of it while disregarding other portions. Within this framework, the findings of fact made by the jury will be sustained if there is some evidence of probative value to support them, and they are not against the great weight and preponderance of the evidence. Even if the appellate court would have found facts contrary to those found by the jury after reviewing the evidence, it cannot substitute its judgment for that of the fact finder if the findings meet the evidentiary test just stated. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Pickens v. Baker*, 588 S.W.2d 406, 409 (Tex.Civ.App.—Amarillo 1979, no writ).

In order to apply the foregoing evidentiary review standards, the appellate court must first ascertain the elements of the particular principle of law activated by the fact findings in question. It must then collate the elements and the evidence in order to determine whether there is any, or sufficient, evidence to support each element. The critical principle of law in this case is waiver and its nature and elements are well established in Texas. When used as an affirmative defense, as in this case, waiver must be specifically pled. Tex.R. Civ.P. 94. It is ordinarily a question of fact, dependent upon things done and said, *Lewis v. Smith*, 198 S.W.2d 598, 601 (Tex. Civ.App.—Ft. Worth 1946, writ ref'd), and the burden of proof is on the party relying on waiver. *Ford v. Culberson*, 158 Tex. 124, 138, 308 S.W.2d 855, 865 (1958). In general, waiver is defined as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it." *Furr v. Hall*, 553 S.W.2d 666, 674 (Tex.Civ. App.—Amarillo 1977, writ ref'd n. r. e.). Stated more broadly, waiver occurs "where one dispenses with the performance of something which he has a right to exact, and occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forebearance to do which is inconsistent with the right or his intention to rely upon it. 92 C.J.S. p. 1061. Waiver, of course, is a matter or question of intention." *Ford v. Culberson*, 308 S.W.2d at 865.

Evidence of waiver generally takes one of three forms. There may be evidence of an express renunciation of the known right. *See* 60 Tex.Jur.2d *Waiver* § 10 (1964). There may be evidence of silence or inaction, coupled with knowledge of the known right, for such an unreasonable period of time as to indicate an intention to waive the right. *See Furr v. Hall*, 553 S.W.2d at 674. Finally, waiver may be evidenced by other conduct of the party knowingly possessing the right of such a nature as to mislead the opposite party into an honest belief that the waiver was intended or assented to. *See, e. g., Hemenway Co., Inc. v. Sequoia Pac. Realco*, 590 S.W.2d 545, 548–49 (Tex.Civ.App.—San Antonio 1979, writ ref'd n. r. e.); *Texas Const. Associates v. Balli*, 558 S.W.2d 513, 521–22 (Tex.Civ.App.—Corpus Christi 1977, no writ).

The elements of waiver, then, are established by evidence that the party possessing the right (1) is aware of the right

and (2)(a) expressly relinquishes it or (2)(b) acts in a manner inconsistent with, or fails to act in a manner consistent with, an intent to claim the right.

After aligning the foregoing elements with the evidence in this case, we have concluded that the partnership's points of error concerning waiver must be overruled. The evidence is undisputed that the partnership was aware of its rights under paragraph 12(c) and that element will not be discussed further. There is no evidence of an express waiver so we must determine whether there is evidence that, by silence, inaction or conduct other than an express renunciation, the partnership acted in a manner inconsistent with, or failed to act in a manner consistent with, an intent to claim the right.

■ The pertinent evidence on the waiver issue, from the partnership's viewpoint, may be summarized as follows. The managing partner of the partnership, Mr. Owen, and another partner discussed Rowe's withdrawal with Rowe several times, both before and after Rowe's letter of November 22, 1977. At no time did anyone indicate to Rowe that the paragraph 12(c) provision would be waived. On December 5, 1977, at the final meeting between Owen and Rowe, Owen advised Rowe that he was authorized to negotiate the terms and conditions of Rowe's withdrawal, including a reduction in the amount of the 12(c) payment, but the 12(c) provision would not be waived. Rowe responded that he was withdrawing from the firm on December 31, 1977, that he was not going to make any payment under paragraph 12(c) and that the partnership could sue him if they didn't like it. The essence of the partnership's evidence is that it continually and expressly made clear to Rowe that it did not intend to waive the paragraph 12(c) provision, that Rowe announced an unequivocal intention to withdraw regardless of that position, and that he did so.

The evidence upon which Roe relies differs considerably from the partnership's version of the pertinent events. There was evidence that the paragraph 12(c) provision had never been enforced against a withdrawing and competing partner and Rowe was aware of that fact. A former partner named Hahn had withdrawn without penalty a few months earlier and the conditions of Hahn's withdrawal were incorporated in Rowe's proposal. Rowe testified that he met with Owen in October of 1977 and they discussed Rowe's desire to withdraw. Rowe stated to Owen that he wanted to withdraw under the same conditions as Hahn and Owen told him any proposed variance in the terms set out by the partnership agreement should be put in writing and presented to the executive committee. Rowe stated that, as a result of the October meeting, he believed he would be allowed to withdraw in the same manner as other former partners. Subsequently, Rowe prepared and sent Owen the letter of November 22, 1977. Rowe characterized the letter several times in his testimony as a "conditional resignation." Minutes of the partnership's executive committee meeting of December 2 and 3, 1977, reveal that "After considerable discussion, the Executive Committee authorized Bob Owen to pursue discussions with Don Rowe to see if an amicable separation could be accomplished."

Rowe's version of the subsequent December 5, 1977 meeting was that Owen advised him that he was prepared to negotiate the terms of Rowe's withdrawal. Rowe told him everything was negotiable and to put the partnership's proposals in writing for further discussion. Apparently very few matters were specifically discussed at the December meeting, but Rowe denied making the positive statements attributed to him by Owen concerning his unequivocal intent to withdraw without making the paragraph 12(c) payment and the need for the partnership to sue him if it desired to enforce the paragraph 12(c) provision. The essence of Rowe's testimony concerning events through December 5, 1977 is that he proposed to resign if permitted to do so without paying a paragraph 12(c) penalty, he could not afford to pay the paragraph 12(c) penalty, and he requested that the partnership put any counter-proposal in writing.

The next day, December 6, 1977, the partnership circulated a memorandum among the employees of the Amarillo office. The memo advised the Amarillo employees that Rowe was resigning as a partner on December 31, 1977. It also stated that Rowe was going to continue the practice of public accounting in Amarillo and recognized that Rowe would probably take some of the partnership's clients. It further stated, "however, we do not anticipate a significant impact on our practice." The memo concluded with instructions on the handling of client needs and inquiries. Rowe testified that after he saw the memorandum "I assumed that I was no longer a member of the firm and that my letter had been accepted in some form, and I began proceeding to make some kind of arrangements." Thereafter, Rowe contacted his clients, procured office space and made arrangements for employees for his practice. The partnership never responded in writing to his November 22, 1977 letter and filed this suit within a few days after his withdrawal on December 31, 1977.

We are satisfied that the evidence upon which Rowe relies is sufficient to support the waiver finding. The language of the November 22, 1977 letter is support for Rowe's verbal assertion that his withdrawal was dependent upon a waiver of the paragraph 12(c) provision. The subsequent events, as described by Rowe, create a factual climate within which the jury could conclude that the partnership's failure to reject Rowe's proposal or respond to Rowe's request to put its counter-proposal in writing, prior to December 31, 1977, was silence or inaction for an unreasonable period of time, indicating an intention to waive the paragraph 12(c) provision. The jury could also conclude, from Rowe's evidence, that his withdrawal was dependent on waiver of the paragraph 12(c) provision and that the December 6, 1977 memorandum by the partnership announcing Rowe's withdrawal, at a time when Rowe had not received an express reply to his proposal, was conduct of such a nature as to mislead Rowe into an honest belief that the terms of his proposed withdrawal, including waiver of the para-

graph 12(c) provision, was assented to. The partnership's evidence outlined above is in direct conflict with the foregoing conclusions. However, we cannot say the conflicting evidence is so overwhelming or the evidence supporting the finding so weak that the finding must be set aside.

Point of error two, challenging the factual sufficiency of the evidence to support the finding of waiver, is overruled. It follows that the legal sufficiency challenge, point of error one, must also be overruled. The partnership's remaining points of error, challenging the other jury findings and the trial court's refusal to enter judgment for the partnership, are also overruled because waiver is a complete defense to the relief sought by the partnership in this suit.

The judgment of the trial court is affirmed.