

# NUMBERS 13-11-00005-CV AND 13-11-00013-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**BRANNAN PAVING GP, LLC**
**D/B/A BRANNAN PAVING COMPANY,**                    **Appellant,**

**v.**

**PAVEMENT MARKINGS, INC.,**
**SAN JUAN INSURANCE AGENCY INC.**
**D/B/A VALLEY INSURANCE PROVIDERS**
**AND LEICHT GENERAL AGENCY,**                    **Appellees.**

---

## On appeal from the 430th District Court
## of Hidalgo County, Texas.

---

# OPINION

**Before Justices Rodriguez, Benavides, and Perkes**
**Opinion by Justice Perkes**

This is an appeal from a breach of contract case between a contractor, Brannan

Paving GP, L.L.C., d/b/a Brannan Paving Company ("Brannan Paving"), and its

subcontractor, Pavement Markings, Inc. ("Pavement Markings"). Brannan Paving claimed that Pavement Markings breached the subcontract by not obtaining additional insured coverage. Pavement Markings joined San Juan Insurance Agency, Inc., d/b/a Valley Insurance Providers ("VIP"), who in turn joined Leicht General Agency ("LGA"). Brannan Paving subsequently asserted negligence claims against VIP and LGA.[1]

Brannan Paving appeals the trial court's take-nothing judgment, contending by four issues, which we have reordered, that the trial court: (1) erred by including a waiver instruction in Question Number 1, a breach of contract question; (2) improperly rendered judgment because the jury's answer to Question Number 1 regarding breach of contract and waiver is not supported by legally sufficient evidence; (3) erred by not granting a new trial because the jury's answer to Question Number 1 regarding breach of contract and waiver is not supported by legally and factually sufficient evidence; and (4) erred by granting LGA's motion to disregard the jury's answers to jury Question Numbers 3 and 4 regarding negligence. Pavement Markings, as cross-appellant, challenges the trial court's take-nothing judgment on its claim for attorney's fees against VIP, arguing by one issue that the trial court erred in disregarding the jury's answers to Question Numbers 5 and 6 regarding deceptive trade practices. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 5, 2004, Brannan Paving and Pavement Markings entered into an agreement related to a highway construction project whereby Pavement Markings contracted to perform road striping services for the project, which included a section of

---

[1] Instead of having a trial regarding the liability claims between the contractor and subcontractor, and thereafter a subsequent separate trial regarding the insurance carrier's alleged liability, all claims and causes of action were brought and heard in the same trial.

U.S. Highway 77 near Sinton, Texas. According to Juan Villescas Jr., the president of Pavement Markings, the company commenced operations on that section of highway on "the next day" after signing the contract. The following excerpt from the contract became the focus of the lawsuit:

> The Subcontractor agrees:
>
> . . . .
>
> G. To carry Workman's Compensation and Public Liability Insurance in companies acceptable to the Owner and Contractor and to furnish the Contractor with certified copies of the applicable policies prior to commencement of operations under this subcontract.
>
> . . . .
>
> STATUTORY WORKERS' COMP
>
> Brannan Paving Company, Inc. is to be named as an **"Additional Insured"** as respects to general liability and automobile policy. A **"Waiver of Subrogation"** shall be issued in favor of Brannan Paving Company, Inc. in regards to all lines of insurance.

It is undisputed that Paving Markings never supplied Brannan Paving with certified copies of the applicable policies.

On May 16, 2004, there was a single-vehicle traffic accident on the section of U.S. Highway 77 on which Pavement Markings had been working, and one of the passengers in the vehicle was killed and the other two occupants were injured. A negligence lawsuit was brought against Brannan Paving and Pavement Markings for joint and several liability. According to the testimony of Waylan Justin Brannan Jr., the owner of Brannan Paving, Brannan discovered after the accident that Pavement Markings had not added Brannan Paving as an additional insured, and Brannan Paving brought a cross-claim for

breach of contract against Pavement Markings for failing to "defend, indemnify, hold harmless and name Brannan Paving GP, L.L.C. as an additional insured."

Pavement Markings then joined its surplus lines retail agent, VIP, asserting causes of action for VIP's negligence in failing to procure insurance, DTPA violations, fraud, breach of fiduciary duty, negligent and false misrepresentation, and breach of contract. VIP, in turn, joined LGA, the surplus lines managing general agent, seeking contribution and indemnity in the event Pavement Markings prevailed on its third party claims. VIP alleged that LGA was negligent for failing to provide an additional insured endorsement as requested by VIP. VIP also moved to designate the surplus lines carrier, "Evanston Insurance Company and Markel Southwest Underwriters, Inc." ("Evanston"), as a responsible third party, and the trial court granted the motion.

Brannan Pavings and Pavement Markings settled the underlying negligence suit against them.[2] Brannan Paving filed its own cross-claim against VIP and LGA "to recover all damages proximately caused by VIP's and LGA's negligence in failing to provide the requested blanket additional insured endorsement to Pavement Markings's general liability policy, including amounts paid to settle claims against [Pavement Markings], reasonable costs of defense or attorney fees, litigation costs, and such further relief deemed appropriate . . . ." The trial was bifurcated, and the issues to be covered by the first trial were limited to the alleged breach of contract and negligence claims, thus leaving aside for a second trial other issues, such as the reasonableness of the

---

[2] The court signed an agreed order of dismissal with prejudice on March 29, 2007, but the original plaintiffs were not technically removed from the case until September 9, 2010, at which point the trial court granted LGA's motion to correct parties.

4

settlement. During the trial, the parties agreed to separately try the attorney-fee issues to the trial court after the jury rendered a verdict.

The first question submitted to the jury asked whether Pavement Markings had breached the contract. The first question also included an instruction on waiver. The jury responded, "No." Based on the jury's response to the first question, LGA and VIP each moved to disregard the answers to the other jury questions, which dealt with compensation resulting from a breach, whether the negligence of any of the named parties, including Evanston, caused the "occurrence in question," the percentages of responsibility attributable to each party listed if negligence was found, whether VIP violated the DTPA in its interactions with Pavement Markings, and the compensation due Pavement Markings in the event the jury found DTPA violations. The trial court entered a take-nothing judgment against Brannan Paving and Pavement Markings on the grounds that "the jury's answer to Question No. 1 precludes any finding of liability" in their favor. This appeal followed.

## II. WAIVER INSTRUCTION

Brannan Paving contends the trial court improperly rendered judgment based on the jury's answer to the following question:

Question No. 1

Did Pavement Markings, Inc. fail to comply with its sub-contract agreement with Brannan Paving?

Failure to comply by Pavement Markings is excused if compliance was waived by Brannan Paving. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No."

5

The jury answered "No."

By two issues, Brannan Paving argues that the trial court erred because the evidence was legally and factually insufficient to support: (1) the trial court's inclusion of the waiver instruction; and (2) a jury finding that Pavement Markings did not breach the subcontract. By a third, related issue, Brannan Paving asserts that because the evidence was legally and factually insufficient to support the jury's answer to Question Number 1, the trial court also erred in denying its motion for new trial.

## A.    Preservation

The Texas procedural rules "govern the preservation requirements for raising a jury charge complaint on appeal and require the complaining party to make an objection before the trial court." *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012); *see* TEX. R. CIV. P. 274; TEX. R. APP. P. 33.1. At trial, Brannan Paving timely objected to the inclusion of waiver in the jury question on the grounds that "I [Brannan Paving's attorney] don't think that the proof in this case is sufficient to support a waiver argument." The trial court overruled the objection. On appeal, VIP and LGA argue that Brannan Paving's "no evidence" objection failed to preserve a complaint as to the form of the question. VIP and LGA contend that Brannan Paving should have requested a separate question on excuse, which includes waiver, and that Brannan Paving's failure to do so does not comply with the preservation requirement of Texas Rule of Civil Procedure 278. Rule 278 provides in relevant part: "Failure to submit a question shall not be deemed a ground for reversal of judgment, unless its submission, in substantially correct wording,

6

has been requested in writing and tendered by the party complaining of the judgment . . . ."  TEX. R. CIV. P. 278.

The preservation requirements of rule 278 apply when a party complains of an omission of an instruction; it does not apply, however, when a party argues that another party's proposed instruction be omitted entirely.  *Turner v. Precision Surgical, L.L.C.*, 274 S.W.3d 245, 248 n.2 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing TEX. R. CIV. P. 274; *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994); *Yellow Cab & Baggage Co. v. Green*, 277 S.W.2d 92, 93 (Tex. 1955); *Greer v. Seales*, No. 09-05-001-CV, 2006 WL 439109, at *4 n.3 (Tex. App.—Beaumont Feb. 23, 2006, no pet.) (mem. op.)).  Brannan Paving does not appeal the omission of a requested instruction but the inclusion of one.  Thus, the preservation requirements of rule 278 do not apply to Brannan Paving's issue.

On appeal, Brannan Paving asserts that the trial court's erroneous inclusion of a waiver instruction in the breach-of-contract question prevents this Court from knowing on what grounds the jury answered the question in the negative—whether on the grounds that there was no breach of contract or, alternatively, on the grounds that there actually was a breach of contract but Brannan Paving waived the consequent rights of the breach. In other words, Brannan Paving frames this issue as a *Casteel* issue, which would potentially trigger a presumed-harm analysis.  *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000) (establishing that reversible error is presumed when a trial court submits to a jury a broad-form question that incorporates multiple theories of liability, one or more of which is invalid, and the appellate court cannot determine upon

7

which of the court-provided grounds the jury found its answer to the question). The Texas Supreme Court, in considering preservation of this particular issue, has ruled that a party need not explicitly reference *Casteel* in its trial objection or challenge the form of the question. *Thota*, 366 S.W.3d at 690. A no-evidence objection is sufficient to preserve this issue. *Id.* at 691. Brannan Paving's complaint being properly preserved, we review the contested charge to determine whether the trial court committed error.

## B. Standard of Review

"We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard of review." *Id.* at 687 (quoting *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000)). "The trial court has considerable discretion to determine proper jury instructions, and '[i]f an instruction might aid the jury in answering the issues presented . . . or if there is any support in the evidence for an instruction, the instruction is proper.'" *Id.* (quoting *La.-Pac. Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998)). "'An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence.'" *Id.* (*quoting Healthcare, L.P., v. Hawley*, 284 S.W.3d 851, 855–56 (Tex. 2009)).

## C. Applicable Law

Although the trial court enjoys considerable discretion in determining the propriety of jury instructions, the trial court is bound to submit only "those questions, instructions, and definitions raised by the pleadings and the evidence." *Harris County v. Smith*, 96 S.W.3d 230, 236 (Tex. 2002); *see* TEX. R. CIV. P. 278. At issue in this case is whether waiver was raised by the evidence.

Waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (quoting *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987); *U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex. 1971)). Evidence of waiver generally takes one of three forms: (1) express renunciation of a known right; (2) silence or inaction, coupled with knowledge of the known right, for such an unreasonable period of time as to indicate an intention to waive the right; or (3) other conduct of the party knowingly possessing the right of such a nature as to mislead the opposite party into an honest belief that the waiver was intended or assented to. *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex. 1981).

"Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Jernigan*, 111 S.W.3d at 156 (citing *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999)); *Rowe*, 619 S.W.2d at 213 (citing *Ford v. Culbertson*, 308 S.W.2d 855, 865 (Tex. 1958)). "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right." *Jernigan*, 111 S.W.3d at 156 (citing *Maryland Cas. Co. v. Palestine Fashions, Inc.*, 402 S.W.2d 883, 888 (Tex. 1966)).

Waiver is an affirmative defense. *See* TEX. R. CIV. P. 94. It may be asserted against a party who waives a right springing from law or, as in this case, from a contract. *Tenneco Inc. v. Enter. Prod. Co.*, 925 S.W.2d 640, 643 (Tex. 1996) (citing *Rowe*, 619 S.W.2d at 213); *Ford*, 308 S.W.2d at 865). Waiver is ordinarily a question of fact, but

9

when the surrounding facts and circumstances are undisputed, the question becomes one of law. *Jernigan*, 111 S.W.3d at 156–57; *Tenneco*, 925 S.W.2d at 643.

**D.    Discussion**

In response to Brannan Paving's objection to the jury charge, the trial court responded, "But it's an issue of fact.   There's disputed facts.   You have your position; they have their's [sic].   Waiver is, generally, a question of fact unless, clearly, there is no dispute on what waiver facts are available.   Okay.   I'm going to deny—I'm going to overrule your objection."   We agree with the trial court's summation of the applicable law of waiver, but we disagree with the conclusion that there were disputed facts on waiver in this trial; the record shows that it was the interpretation of the relevant facts that was disputed rather than the facts themselves.

All three appellees argue that Brannan Paving waived Pavement Markings's compliance with the subcontract by allowing Pavement Markings to "commence operations" before receiving certified copies of the applicable policies.   Brannan Paving never contested the fact that work began without it first receiving and verifying the contents of the applicable insurance policy, nor did Brannan Paving proffer a competing version of events.   There was no evidence admitted that addressed Brannan Paving's intent; instead, appellees' interpretation of "prior to commencement of operations" language was that it precluded Brannan Paving's recovery.   The facts were not disputed. The parties merely came to differing conclusions about the contract based on the same underlying facts.   Whether those facts constitute waiver is a question of law, which we

10

review de novo.  *See Formosa Plastics Corp., USA v. Kajima Int'l, Inc.*, 216 S.W.3d 436, 488 (Tex. App.—Corpus Christi 2006, pet. denied).

After considering the record, we hold that Pavement Markings failed to meet its burden to prove that Brannan Paving's conduct, or more accurately inaction, was inconsistent with the intent to assert its contractual right of being insured against the potential negligence of its subcontractor.  *See Jernigan*, 111 S.W.3d at 156.  We hold that Brannan Paving's inaction did not show an intent to yield the right.  *See Tenneco*, 925 S.W.2d at 643 (ruling that inaction may establish waiver if it is for so long a period of time that it shows an intent to yield the known right).  Brannan Jr. testified that he was unaware that Brannan Paving was not listed as an additional insured under Pavement Markings's policy until after the accident.  These facts may indicate a laxness in enforcement or Brannan Paving's oversight in ensuring that Pavement Markings comply with the contract, but they do not show the intent "clearly demonstrated by the surrounding facts and circumstances" to relinquish a known right.  *See Jernigan*, 111 S.W.3d at 156.

Pavement Markings and VIP compare this case to *Tenneco*.  In that case, several oil companies, including Tenneco Oil Company, shared ownership in a natural gas liquids fractionation plant.  *Tenneco*, 925 S.W.2d at 641–42.  The plant operations were governed by a contract "called the Restated Operating Agreement," which provided, among other things, that "each owner, under certain circumstances" deliver a certain amount of raw natural gas liquids, or "raw make," to the plant for processing.  *Id.* at 642.  In addition, section 12.2 of the agreement provided that when an owner conveyed its

11

ownership interest to a subsidiary, the subsidiary must "enter[] into an agreement with Operator" to provide the same amount of daily raw make as the conveying owner. *Id.*

Under the agreement, Tenneco Oil was to deliver 31,000 barrels of raw make per day. *Id.* Tenneco Oil subsequently conveyed its ownership interest in the plant to its wholly owned subsidiary, Tenneco Natural Gas Liquids. *Id.* Under section 12.2 of the agreement, Tenneco Natural Gas Liquids should have contracted with the operator to provide at least 31,000 barrels of raw make per day—the same daily commitment of Tenneco Oil. *Id.* Tenneco Natural Gas Liquids did not enter into such agreement and delivered less than 31,000 barrels per day, and other plant owners subsequently challenged the conveyance from Tenneco Oil to Tenneco Natural Gas Liquids as a breach of contract. *Id.* The "Tenneco Defendants" alleged that the other owners waived the contractual right. *Id.* at 643.

In analyzing the issue of waiver, the supreme court noted that the Tenneco Defendants provided evidence in the form of "deposition excerpts from the [complaining] plant owners' designated representatives" that demonstrated that "(1) various owners knew that Tenneco Oil had transferred its ownership interest to Tenneco Natural Gas Liquids; (2) Tenneco Natural Gas Liquids had not executed an agreement in satisfaction of Section 12.2; and (3) Tenneco Natural Gas Liquids was delivering substantially less than 31,000 barrels per day." *Id.* Moreover, evidence showed that the other plant owners "accepted Tenneco Natural Gas Liquids as a full-fledged fellow owner and that they had elected not to enforce any rights arising under Section 12.2." *Id.*

The facts giving rise to waiver in *Tenneco* are distinguishable from the facts in this case.  In *Tenneco*, the evidence showed that the complaining parties knew of the subsidiary's failure to comply with the contract but nevertheless treated the subsidiary "as a full-fledged fellow owner" and "elected not to enforce any rights . . . ."  *Id.* at 643.  Here, there is no evidence that Brannan Paving was aware of Pavement Markings's failure to comply with the subcontract; in fact, the evidence establishes the opposite—Brannan Jr. testified that he discovered the failure to obtain additional insured coverage after the accident had already occurred.  Unlike the complaining parties in *Tenneco*, Brannan Paving did not affirmatively decline a contractual provision that Brannan Paving knew Pavement Markings to have breached.

In *Tenneco*, the evidence showed that complaining parties, knowing of the breach, failed to enforce their contractual rights for three years.  *Id.*  In this case, there was only one day between entering into the agreement and Pavement Markings's commencement of operations.  The traffic accident occurred about two months later.  There is no evidence that Brannan Paving, who was unaware of the alleged breach, remained inactive for so long a period of time as to manifest its intent to waive compliance with the contract as in *Tenneco*.  *See Jernigan*, 111 S.W.3d at 157 ("the defendant's silence or inaction must be inconsistent with the intent to rely upon the right . . . .").  Thus, we hold that *Tenneco* does not support a conclusion that Brannan Paving, through its oversight or laxness, exemplified a clear intent to relinquish a known right.

13

**E.      Condition Precedent**

LGA supports its waiver contention by construing the contractual provision that required Pavement Markings to provide Brannan Paving certified copies of the applicable insurance policies as a condition precedent to Pavement Markings's performance of road work under the contract.   It is true that a condition precedent can be waived, *see Sun Exploration & Production Co.*, 728 S.W.2d at 37, but the elements of waiver still require a showing of intent, *see Jernigan*, 111 S.W.3d at 156.   Assuming without deciding that the insurance provision was a condition precedent, we nevertheless hold that Pavement Markings failed to satisfy its burden of proof to present some evidence that Brannan Paving intended to relinquish its contractual right.   Because there was no evidence that Brannan Paving intentionally relinquished a known right, which is a necessary element of waiver, the trial court erred by submitting the waiver instruction to the jury.

### III. HARM ANALYSIS

Having determined that no evidence manifested Brannan Paving's intent to waive insurance coverage, we must consider whether the inclusion of the waiver instruction was harmful.   An appellate court will only reverse a judgment for a charge error if the error was harmful because it "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals."   *See* TEX. R. APP. P. 44.1(a); *Thota*, 366 S.W.3d at 687.   Brannan Paving argues that we should apply the *Casteel* presumed-harm analysis.

14

## A.  *Casteel*

*Casteel* established that there is presumed harm when a trial court submits a broad-form jury question that incorporates multiple theories of liability, one or more of which is invalid, and the appellate court cannot determine upon which ground the jury found its answer to the question.  *See Casteel*, 22 S.W.3d at 388.  The supreme court has extended the *Casteel* presumed-harm analysis to the improper mixing of valid and invalid theories on damages, *see Harris County v. Smith*, 96 S.W.3d 230 (Tex. 2003), but has otherwise been reluctant to extend it further, expressly declining to apply it to a jury question involving a valid theory of liability and an improperly included instruction on inferential rebuttal.  *See Bed, Bath, & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 756–57 (Tex. 2006).  Recently, the supreme court considered whether to apply *Casteel* to a jury question that included liability and an instruction on inferential rebuttal *and* an affirmative defense.  *See Thota*, 366 S.W.3d at 680.  The supreme court concluded that *Casteel* did not apply, but it did so because the contested jury question included several blanks, which allowed the supreme court to determine on which basis the jury found its verdict.  *See id.* at 691–92.

## B.  Discussion

Unlike *Thota*, the jury question in this case had only one blank, and we cannot determine whether the jury's "no" answer meant that it found that a breach did not exist or that a breach did exist but was subsequently waived.  Both theories were advanced at trial.

15

VIP took the position that the absence of the additional insured endorsement did not preclude actual coverage, and the only expert to testify at trial, Gary Beck, emphatically declared that there was "no doubt in [his] mind" that Brannan Paving was an additional insured and that Pavement Markings did not breach the contract. In the closing argument by the counsel for VIP, counsel emphasized Beck's expert opinion and the position that there was no breach because coverage existed.

Counsel for LGA, on the other hand, argued to the jury to answer jury Question Number 1 in the negative because in his "personal opinion . . . it was weighed [sic]." LGA's attorney then explained why waiver was a proper ground upon which to answer Question Number 1.

Counsel for Pavement Markings stated in his closing argument, "[T]here's really only two positions in this case[;] Valley Insurance Providers has a theory, and Leicht General Agency has a theory. And if you believe Valley Insurance Providers' theory, there was coverage," and thus no breach of contract. If, however, "LGA's theory is correct, I would argue to you that there still is no breach of contract because Brannan Paving waived that provision."

Although two theories were included in the jury question, there was only one blank. We hold the trial court's inclusion of a valid theory of liability and an improperly-included affirmative defense instruction in the same question with only one answer blank created the type of confusion that the *Casteel* presumed-harm analysis was designed to address. *See Thota*, 366 S.W.3d at 687–88; *Casteel*, 22 S.W.3d at 388; *see also Pantaze v. Welton*, No. 05-96-00509-CV, 1999 WL 673448, at *6 (Tex. App.—Dallas Aug. 31, 1999,

16

no pet.) (mem. op., not designated for publication) (holding *Casteel* applies when the trial court improperly included the affirmative defense of waiver in a jury question).

The erroneous inclusion of an affirmative-defense instruction is different than the erroneous inclusion of an inferential-rebuttal instruction, which the supreme court has excluded from the *Casteel* presumed-harm analysis. *See Urista*, 211 S.W.3d at 756–57. "Inferential rebuttal defenses are distinct from affirmative defenses in that an inferential rebuttal, as the name implies, rebuts part of the plaintiff's cause of action, while an affirmative defense relieves the defendant of liability even if all the elements of the plaintiff's cause of action are established." *Perez v. DNT Global Star*, *L.L.C.*, 339 S.W.3d 692, 700 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Moulton v. Alamo Ambulance Serv.*, 414 S.W.2d 444, 448 (Tex. 1967); *Buls v. Fuselier*, 55 S.W.3d 204, 211 (Tex. App.—Texarkana 2001, no pet.)). An affirmative defense "provides an independent reason why the plaintiff should not recover." *Genesis Tax Loan Servs. v. Kothmann*, 339 S.W.3d 104, 108 (Tex. 2011) (citing *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991)).

Applied here, the jury had two independent bases on which it could find Brannan Paving should not recover on its breach of contract claim. We are unable to determine which ground the jury chose, and we cannot tell what effect the inclusion of the affirmative-defense instruction on waiver had on the jury. Given that waiver pervades Brannan Paving's first through third issues on appeal, they are all sustained. *See Casteel*, 22 S.W.3d at 389–90.

# IV. NEGLIGENCE

By its fourth issue, Brannan Paving contends the trial court erred in granting LGA's motion to disregard jury Question Numbers 3 and 4 regarding negligence.[3] Question Number 3 asked, "Did the negligence, if any, of those named below proximately cause the occurrence in question?"[4] There was an answer blank by each listed party. The jury found the negligence of Brannan Paving, Pavement Markings, VIP, and LGA, but not Evanston, proximately caused the occurrence in question. Question Number 4 asked the jury to "[a]ssign percentages of responsibility only to those you found or contributed to cause the occurrence in Question No. 3 . . . ." The jury found Brannan Paving to be 10% responsible, Pavement Markings to be 0% responsible, VIP to be 50% responsible, LGA to be 40% responsible, and Evanston to be 0% responsible. Interestingly, the jury questions, as submitted, wholly failed to identify the name of the party that was purportedly injured by the "occurrence" and no jury question was submitted regarding damages.

LGA moved to disregard the jury's findings under Question Numbers 3 and 4 on the grounds: (1) no evidence supports the jury's findings, particularly with respect to duty; (2) Brannan Paving's claims sound in contract, thus precluding recovery in tort; and (3) the jury's answers to Question Numbers 1, 2, and 7 rendered Question Numbers 3 and 4 immaterial because the jury found Pavement Markings was not liable to Brannan

---

[3] Brannan Paving, in its brief, argues "[t]here is evidence to support a duty from Valley [VIP] to Pavement Markings and a breach of that duty." Brannan Paving's brief further includes discussion of VIP. Thus, we are going to construe Brannan Paving's issue as including VIP. *See* TEX. R. APP. P. 38.1(f).

[4] As noted by counsel for VIP during Brannan Paving's JNOV hearing, "What was the occurrence? Well, every lawyer in this room, Your Honor, has a different idea about what the occurrence was." "Everybody has a different idea of what the occurrence was, and the occurrence was never defined for the jury." No complaint about the manner of submission of the jury question is before us.

Paving. The trial court granted LGA's motion without specifying the grounds for its ruling, which Brannan Paving now appeals. Brannan Paving acknowledges there is no privity of contract between it and LGA. Brannan Paving asserts, however, that LGA "was in a chain of agencies handling the insured's order and therefore owed a duty to use reasonable care to secure coverage and to not provide inaccurate statements about coverage being secured." We disagree.

## A.    Standard of Review

Foreseeability of harm is the principal factor to consider when determining whether a party owes a duty. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 624 (Tex. 2009). We analyze foreseeability by determining whether the defendant, "as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985). We make this determination from a two-prong test: (1) the injury must be of such general character as might reasonably have been anticipated; and (2) the injured party should be so situated to the wrongful act that injury to him or one similarly situated might reasonably have been foreseen. *Mellon Mortgage Co., v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999); *Nixon*, 690 S.W.2d at 551.

An insurance broker owes common-law duties to a client for whom the broker undertakes to procure insurance: (1) to use reasonable diligence in attempting to place the requested insurance; and (2) to inform the client promptly if unable to do so. *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992); *Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 389 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The

19

nature of the relationship between the insurance broker and the client is a significant consideration in determining the existence of a duty of care in cases involving professional negligence. *W. Houston Airport, Inc. v. Millennium Ins. Agency, Inc.*, 349 S.W.3d 748, 754 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Tex. Home Mgmt., Inc. v. Peavey*, 89 S.W.3d 30, 34 (Tex. 2002)). In this regard, the Fourteenth Court of Appeals opined:

> Generally, one who has sustained damages because of professional negligence may not proceed against the professional unless there is privity of contract. *See Ervin v. Mann Frankfort Stein & Lipp CPAs, L.L.P.*, 234 S.W.3d 172, 182 (Tex. App.—San Antonio 2007, no pet.) (pertaining to accountant-client relationship); *Hartman v. Urban*, 946 S.W.2d 546, 548–50 (Tex. App.—Corpus Christi 1997, no writ) (pertaining to engineer-client relationship); *Wright v. Gundersen*, 956 S.W.2d 43, 48 (Tex. App.—Houston [14th Dist.] 1996, no writ) (pertaining to attorney-client relationship). Privity for purposes of professional negligence is the contractual connection or relationship existing between two or more parties; the relationship can be formed by express or implied contract. *Ervin*, 234 S.W.3d at 182. Several courts in other jurisdictions have concluded that an insurance broker does not owe a duty unless there is privity. *See, e.g., Seal v. Hart*, 2002 MT 149, 28–38, 310 Mont. 307, 50 P.3d 522; *Benjamin Shapiro Realty Co., LLC. v. Kemper Nat'l Ins. Co.*, 303 A.D.2d 245, 756 N.Y.S.2d 45, 46 (N.Y. App. Div. 2003); *Lu-An-Do, Inc. v. Kloots*, (1999), 131 Ohio App. 3d 71, 76, 721 N.E.2d 507, 510; *Workman v. McNeal Agency, Inc.*, 217 Ga. App. 686, 458 S.E.2d 707, 709 (Ga. App. 1995).

*W. Houston Airport, Inc. v. Millennium Ins. Agency, Inc.*, 349 S.W.3d 748, 752 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

## B.    Discussion

Brannan Paving asserted cross-claims against Pavement Markings's surplus lines retail agent, VIP, for negligently "failing to provide the requested blanket additional insured endorsement to Pavement Markings's general liability policy . . . ." and upon VIP's surplus lines managing general agent, LGA, for negligently failing to provide an additional

insured endorsement as requested by VIP. Brannan Paving sought "to recover all damages proximately caused by VIP's and LGA's negligence in failing to provide the requested blanket additional insured endorsement to Pavement Markings's general liability policy, including amounts paid to settle claims against [Pavement Markings], reasonable costs of defense or attorney fees, litigation costs, and such further relief deemed appropriate . . . ."

An insurance agent, however, generally does not owe a duty unless there is privity. Brannan Paving does not cite, nor did we find, any Texas case that interposed any duty in favor of a non-client upon a client's insurance agent regarding the agent's negligent failure to procure a liability policy with a certificate designating the non-client as an additional insured. Rather, in *West Houston Airport*, the Fourteenth Court of Appeals was asked to determine whether "an insurance broker owes a duty to a non-client when the broker's client requests procurement of a general-liability policy with a certificate designating the non-client as an additional insured." *Id.* at 751. The court concluded that even if the injury relevant to the case was foreseeable, there was no relationship, contractual or otherwise, between the parties; they had never even communicated with each other prior to the lawsuit. *See id.* at 754. The court held that no duty existed. *See id.*

The same logic necessarily precludes the imposition of a duty on LGA or VIP as to Brannan Paving. Brannan Paving was not a client of either company, and the evidence shows that there was no contractual connection or relationship between Brannan Paving and LGA or VIP, such as would create privity. In fact, the evidence indicates that

21

Brannan Paving never directly communicated with LGA. Accordingly, we hold that neither LGA nor VIP owed a duty of professional care to Brannan Paving regarding the procurement of insurance as an additional insured. *See W. Houston Airport*, 349 S.W.3d at 754–55; *see also Hartman v. Urban*, 946 S.W.2d 546, 550 (Tex. App.—Corpus Christi 1997, no writ) (holding engineer who prepared erroneous plat did not owe duty to subsequent purchaser because of lack of privity, even though it was foreseeable purchaser would rely on plat). We overrule Brannan Paving's fourth issue.

## V. PAVEMENT MARKINGS'S CROSS-APPEAL

By one cross-issue, Pavement Markings appeals the trial court's take-nothing judgment on its claim against VIP for attorney's fees. Specifically, Pavement Markings argues it is entitled to recover the attorney's fees that it incurred in defending itself against Brannan Paving under: (1) the "Equitable Exception" to the general rule requiring contractual or statutory basis for recovery of attorney's fees; and (2) the Deceptive Trade Practices Act (DTPA).

## A. Equitable Exception

In Texas, attorney's fees expended in litigation with third parties are not generally recoverable as damages if they are not provided by statute or by agreement between the parties. *Turner v. Turner,* 385 S.W.2d 230, 233 (Tex. 1965); *City of Garland v. Booth*, 895 S.W.2d 766, 771 (Tex. App.—Dallas 1995, writ denied). In *Turner*, the Texas Supreme Court discussed an exception—often called the "equitable exception" or the "tort of another exception"—to this rule. *See* 385 S.W.2d at 233. The exception is recognized in the Second Restatement of Torts, as follows:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

RESTATEMENT (SECOND) OF TORTS § 914 (1979); *see also Turner*, 385 S.W.2d at 234.

Assuming without deciding that the equitable exception to the American Rule has been adopted,[5] we hold that it is inapplicable to the present case because there is no underlying finding that VIP committed any tort against Pavement Markings. In that regard, the relevant jury questions involving negligence, Question Numbers 3 and 4, wholly failed to indicate the name of any injured party. A prerequisite to recovery under the exception is that the party seeking recovery show that a tort of another, here VIP, required the party, here Pavement Markings, to bring or defend an action against a third party, here Brannan Paving. *See* RESTATEMENT (SECOND) OF TORTS § 914 (1979). Because the jury did not find VIP committed a tort against Pavement Markings, we overrule this sub-issue.

## B. DTPA

Pavement Markings also asserts that it can recover its attorney's fees under the DTPA because the jury found, in Question Numbers 5 and 6, that VIP violated the DTPA by acting unconscionably and in a "false, misleading, or deceptive" manner toward Pavement Markings. In Question Number 7, the jury was asked what damages,

---

[5] Although the Texas Supreme Court discussed the existence of the equitable exception, *see* RESTATEMENT (SECOND) OF TORTS § 914 (1979), in *Turner v. Turner*, it did not adopt it. *See* 385 S.W.2d 230, 233 (Tex. 1965); *see also Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 119 (Tex. 2009) (construing the exception as not adopted by *Turner* and Texas law). Since *Turner*, however, the Texas appellate courts have split on whether to adopt the exception. As in *Turner*, we need not address the exception because it is inapplicable to the case.

excluding attorney's fees, Pavement Markings should receive for the DTPA violations. The jury awarded zero damages. No jury question was submitted regarding attorney's fees and no attorney's fees were awarded.[6]

On appeal, Pavement Markings argues that attorney's fees are recoverable "economic damages" for DTPA violations. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a) (West 2011). The DTPA defines "economic damages" as follows:

> "Economic damages" means compensatory damages for pecuniary loss, including costs of repair and replacement. The term does not include exemplary damages or damages for physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society.

*Id.* § 17.45(11). According to Pavement Markings, because attorney's fees are not explicitly excluded as economic damages, they qualify.

The Texas Supreme Court, however, has repeatedly held that a party who has failed to recover actual damages or damages for mental anguish is not entitled to recover attorney's fees under the DTPA. *See Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002). The supreme court recently expounded on this matter, as follows:

> The DTPA authorizes consumer suits when deceptive acts are the producing cause of "[actual damages] or damages for mental anguish." TEX. BUS. & COM. CODE § 17.50(a)(1). The statute permits trial courts to award relief only to a prevailing consumer. *Id.* § 17.50(b). Among those remedies is an order to restore illegally acquired money or property, *see id.* § 17.50(b)(3), and that is the remedy Cruz seeks. But those remedies are unavailable unless a consumer has prevailed.
>
> The jury awarded Cruz no damages on his DTPA claim. He cannot, therefore, satisfy section 17.50(a)(1). The trial court found that Cruz had suffered "injury or harm" but left it to the jury to quantify that amount. We have held that a party who failed to recover actual damages or damages for

———————
    [6] During the trial, the parties stipulated that the trial court would determine the amount of attorney's fees to be awarded in the event of a successful outcome in this portion of the trial.

24

mental anguish was not entitled to attorney's fees under the DTPA. *See Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002). We see no reason to treat Cruz's restoration claim differently. Even a rescission award requires a showing of actual damages. *See Russell v. Indus. Transp. Co.*, 113 Tex. 441, 258 S.W. 462, 465 (Tex. 1924) (holding that "some pecuniary injury is essential to an action to rescind a contract for fraud"). This is not a case in which Cruz's injury was undisputed but "the jury was not asked to place a monetary value on this injury." *Bonanza Rests. v. Uncle Pete's, Inc.*, 757 S.W.2d 445, 448 (Tex. App.—Dallas 1988, writ denied) (holding that where consumer clearly sustained injury, jury's failure to award damages was not fatal to rescission claim, because jury had not been asked about the particular injury sustained). The statute's clear language provides a cause of action only to consumers who have sustained damages, and the jury awarded Cruz none.

*Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012); *see also In re Nalle Plastics Family Limited Partnership*, No. 11-0903, ___ S.W.3d ___, 2013 Tex. LEXIS 396 (Tex. May 17, 2013) ("While attorney's fees for the prosecution or defense of a claim may be compensatory in that they make a claimant whole, they are not, and have never been, damages.").

Pavement Markings's only damages claim constitutes attorney's fees, which has been expressly excluded as a sole ground of recovery under the DTPA. Thus, we overrule this sub-issue.

We overrule Pavement Markings's cross-issue.

### VI. CONCLUSION

We reverse the judgment with respect to the breach of contract claims brought by Brannnan Paving GP, LLC against Pavement Markings, Inc., and remand the breach of contract claims to the trial court for further proceedings.[7] We affirm: (1) the judgment

---

[7] No determination or disposition is made hereby regarding the availability of attorney's fees by any party with respect to such breach of contract claims.

25

with respect to the negligence claims brought by Brannan Paving GP, LLC against San Juan Insurance Agency, Inc., d/b/a Valley Insurance Providers ("VIP") and Leicht General Agency, and render that Brannan Paving GP, LLC take nothing by its negligence claims; and (2) the judgment with respect to the DTPA claims brought by Pavement Markings, Inc. against San Juan Insurance Agency, Inc., d/b/a Valley Insurance Providers, and render that Pavement Markings Inc. take nothing by its DTPA claims.[8]

GREGORY T. PERKES
Justice

Delivered and filed the
25th day of July, 2013.

---

[8] No determination or disposition is made regarding any other claim or cause of action that was brought by Pavement Markings, Inc. against VIP. Pavement Markings, Inc. did not assert any claim or cause of action against LGA in the trial court.