**WEST HOUSTON AIRPORT, INC.,**
Appellant/Cross–Appellee,

v.

**MILLENNIUM INSURANCE AGEN-CY, INC., Appellee/Cross–Appel-lant.**

No. 14–10–00278–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 25, 2011.

George Andrew Coats, The Woodlands, for appellant.

Rick Lee Oldenettel, Kevin Michael Long, Houston, for appellee.

Panel consists of Justices ANDERSON, SEYMORE, and McCALLY.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, West Houston Airport, Inc. ("WHA"), contends the trial court erred by granting appellee's, Millennium Insurance Agency, Inc. ("Millennium"), motion for summary judgment. In a cross-appeal, Millennium contends the trial court erred by refusing to hold an evidentiary hearing on Millennium's counterclaim for sanctions against WHA. We affirm.

## I. Background

In June 1997, Pelican Importing & Export, Inc. d/b/a Interfert ("Interfert") leased an airport hangar to Volume Millwork, Inc. ("VMI") for a term of five years. VMI manufactured commercial cabinetry. Under the lease, VMI was required to obtain $1,000,000 per occurrence in general-liability coverage on the hangar "covering Tenant's activities in the Premises," and name the landlord as an additional insured under the policy.

In November 2001, Interfert sold the hangar to the Woodrow V. Lesikar Family Trust ("the Trust"), which assigned the lease to WHA. According to WHA, shortly after the hangar was sold to the Trust, VMI breached the lease. WHA and the Trust obtained an eviction order from the justice court; VMI appealed this order for de novo review by the county court. In August 2003, a judgment was signed in which the county court (1) concluded the lease expired by its own terms on July 1, 2002, (2) recognized WHA was awarded sole possession of the hangar on November 14, 2002, and (3) determined VMI was a holdover tenant during this four-month period. In October 2002, during the period when VMI was a holdover tenant, the

hangar was damaged in a fire allegedly caused by a large oven used by VMI.

Additional litigation ensued between WHA and VMI, including WHA's claim that VMI was responsible for damages caused by the fire. According to WHA, during his deposition, VMI president Billy Shiver identified Millennium, "through its agent and employee Roger Beathard," as "the insurance agency [that] obtained insurance coverage for VMI." [1] Shiver testified he provided a copy of the lease to Beathard and requested that Beathard obtain whatever coverage was required under the lease.

On December 8, 2005, WHA sued Millennium, alleging "professional negligence" for failing to obtain the required amount of insurance coverage. Specifically, WHA alleged Millennium procured a policy that included a $50,000 limitation for damage caused by fire—far less than the lease—specified requirement of $1,000,000 in general-liability coverage. WHA contends that to the extent its damages "are not covered by an applicable policy of insurance as required by the lease, [its] uninsured loss, if any, was proximately caused by the professional negligence of the agents and employees of [Millennium.]" WHA presented evidence that (1) Shiver requested Beathard to procure whatever coverage was required under the lease, (2) Beathard informed Shiver that the policy complied with the lease requirements, but (3) the policy included a $50,000 limitation of liability for damages caused by fire. Thus, the parties apparently do not dispute the fact that the comprehensive general-liability feature of the policy provided $1,000,000 coverage; it is the $50,000 limitation for damage caused by fire that precipitated this dispute.

---

1. We recognize that Millennium contends it is not liable for Beathard's negligence because Beathard was an independent contractor. However, for purposes of our opinion, we assume Millennium was responsible for procuring insurance as requested by VMI.

■ Millennium filed a motion for summary judgment in which it argued, among other grounds, that it owed no duty to WHA and WHA's claim is barred by limitations. In August 2008, the trial court disposed of WHA's claim by granting Millennium's motion for summary judgment without specifying grounds. Subsequently, WHA filed a motion for reconsideration, which the trial court denied.[2] In January 2010, WHA filed a motion for summary judgment requesting that the trial court deny Millennium's counterclaim for sanctions. The trial court granted WHA's motion on February 26, 2010.

## II. SUMMARY JUDGMENT

In five issues, WHA contends the trial court erred by granting Millennium's motion for summary judgment.

### A. Standard of review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). The party moving for a traditional summary judgment bears the burden to show the absence of an issue of material fact pertaining to one or more elements of the non-movant's cause of action. Tex.R. Civ. P. 166a(c); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex.2004). If the movant establishes its right to summary judgment, the burden shifts to the non-movant to raise a genuine issue of material fact. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). In reviewing the trial court's decision to grant summary judgment, we indulge every reasonable inference from the evidence in favor of the non-movant, resolve any doubts arising from the evidence in its favor, and take as true all evidence favorable to it. *Joe*, 145 S.W.3d at 157.

### B. Millennium's duty to WHA

■ In its fourth issue, WHA contends the trial court erred by granting summary judgment based on Millennium's contention that it did not owe a duty of care to WHA. WHA alleges that Millennium committed acts amounting to professional negligence by failing to comply with VMI's request for liability coverage required under the lease. Millennium contends it did not owe a duty to WHA because there was no agent-client relationship between Millennium and WHA.

Texas courts have generally recognized that an insurance broker owes the following common-law duties to a client for whom the broker undertakes to procure insurance: (1) to use reasonable diligence in attempting to place the requested insurance; and (2) to inform the client promptly if unable to do so. *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992); *Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 389 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). However, the parties have not cited, nor have we found, any Texas cases interposing duties, if any, an insurance broker might owe to a non-client when the broker's client requests procurement of a general-liability policy with a certificate designating the non-client as an additional insured.

---

**2.** In its order denying reconsideration, the trial court explained that the summary judgment was granted because WHA's claims are barred by the statute of limitations. The court further noted it did not consider whether Millennium owed a duty to WHA. Hence, the trial court arguably limited the ground upon which it granted summary judgment to the affirmative defense of limitations. Nevertheless, we still may affirm the judgment on other grounds raised in Millennium's motion for summary judgment. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *In re TCW Global Project Fund II, Ltd.*, 274 S.W.3d 166, 170 (Tex.App.-Houston [14th Dist.] 2008, no pet.).

Generally, one who has sustained damages because of professional negligence may not proceed against the professional unless there is privity of contract. *See Ervin v. Mann Frankfort Stein & Lipp CPAs, LLP.*, 234 S.W.3d 172, 182 (Tex.App.-San Antonio 2007, no pet.) (pertaining to accountant-client relationship); *Hartman v. Urban*, 946 S.W.2d 546, 548–50 (Tex.App.-Corpus Christi 1997, no writ) (pertaining to engineer-client relationship); *Wright v. Gundersen*, 956 S.W.2d 43, 48 (Tex.App.-Houston [14th Dist.] 1996, no writ) (pertaining to attorney-client relationship). Privity for purposes of professional negligence is the contractual connection or relationship existing between two or more parties; the relationship can be formed by express or implied contract. *Ervin*, 234 S.W.3d at 182. Several courts in other jurisdictions have concluded that an insurance broker does not owe a duty unless there is privity. *See, e.g., Seal v. Hart*, 2002 MT 149, ¶¶ 28–38, 310 Mont. 307, 50 P.3d 522; *Benjamin Shapiro Realty Co., LLC v. Kemper Nat'l Ins. Co.*, 303 A.D.2d 245, 756 N.Y.S.2d 45, 46 (N.Y.App. Div.2003); *Lu–An–Do, Inc. v. Kloots*, 131 Ohio App.3d 71, 76, 721 N.E.2d 507, 510 (1999); *Workman v. McNeal Agency, Inc.*, 217 Ga.App. 686, 458 S.E.2d 707, 709 (1995). *But see, e.g., Carter Lincoln–Mercury, Inc., Leasing Div. v. EMAR Group, Inc.*, 135 N.J. 182, 202, 638 A.2d 1288, 1297–98 (1994) (explaining broker may be liable, not only to those with whom he has privity, but to others "found within the zone of harm emanating from the broker's actions"); *Hamer v. Kahn*, 404 So.2d 847, 849–50 (Fla. 4th DCA 1981).

In its petition, WHA alleged as the sole basis for Millennium's negligence that Beathard did not obtain the correct amount of coverage after VMI instructed him to procure coverage required under the lease with a certificate naming the landlord as an additional insured. Millen-

nium attached WHA's answers to interrogatories in which WHA acknowledged the basis of its claim was VMI's instruction to Beathard to procure insurance required under the lease. Further, WHA admitted it had no "conversations" with Millennium or Beathard regarding insurance coverage. In its response, WHA presented evidence that VMI informed Beathard when the hangar was sold to a new party; however WHA did not present evidence raising a fact issue regarding communications between WHA and Millennium. We conclude the summary-judgment evidence conclusively established that Millennium and WHA did not enter into any express or implied contract regarding insurance coverage. Thus, there was no contractual privity between Millennium and WHA. *See* Black's Law Dictionary (9th ed. 2009) ("privity of contract[:] The relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so."); *see also Ervin*, 234 S.W.3d at 182–83 (explaining implied contract requires "a meeting of the minds").

Nevertheless, WHA argues that Millennium had a duty because it agreed to procure the insurance policy required under the lease, in which the landlord (subsequently, WHA as assignee) would be named as an additional insured. However, WHA's status as an additional insured is not relevant. In its petition, WHA alleged it had filed suit against VMI to recover damages caused to the hangar. WHA seeks damages from Millennium to the extent WHA recovers an amount from VMI that exceeds the liability insurance coverage procured by Millennium. In this posture, WHA is not asserting its status as an additional insured under the policy; instead, WHA is a third-party claimant against VMI, and VMI would be indemnified under the liability coverage in the

policy should WHA prevail. In other words, WHA is in the same position as any third-party injured by VMI's activities at the hangar.[3] Thus, WHA's status as an additional insured does not advance its duty argument.

■ We also recognize that the relationship between VMI and Millennium is separate and distinct from the relationship between VMI and WHA. Although Millennium undertook a duty to obtain insurance requested by VMI, VMI had a contractual obligation to obtain insurance required by the landlord, and we decline to shift VMI's responsibilities to Millennium. *See Tex. Home Manag., Inc. v. Peavy*, 89 S.W.3d 30, 33–34 (Tex.2002) (recognizing that the consequences of imposing a burden on the actor is a factor to consider when determining whether the actor had a legal duty). The underlying lease was between VMI and the landlord, and it was ultimately VMI's burden to procure liability coverage required under the lease. Hypothetically, if VMI requested coverage required under the lease, *then* instructed Millennium not to include the landlord as an additional insured, in the absence of privity between Millennium and the landlord, Millennium would certainly not be a cognizable professional-liability defendant for failing to protect the landlord's interests, despite the requirement in the lease that the landlord was to be named as an additional insured.

■ We acknowledge that foreseeability of harm is the principal factor to consider when determining whether a party owes a duty. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 624 (Tex.2009) (citation omitted). We analyze foreseeability by determining whether the defendant, "as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex.1985). This determination is gleaned from a two-prong test: (1) the injury must be of such a general character as might reasonably have been anticipated; and (2) the injured party should be so situated relative to the wrongful act that injury to him or one similarly situated might reasonably have been foreseen. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex.1999); *Nixon*, 690 S.W.2d at 551.

■ Under the lease, VMI was required to obtain a policy in which the landlord was named as an additional insured with a cross-liability endorsement. A cross-liability endorsement provides liability coverage when an additional insured sues the named insured for negligence even though they are both covered by the same policy. *See* Rod D. Margo, *Aspects of Insurance in Aviation Finance*, 62 J. Air L. & Com. 423, 457 (1996) ("A cross-liability clause is a provision in a liability policy under which it is agreed that the inclusion of more than one insured in the policy will not preclude the right of the original insured to recover for claims made against the original insured by additional insureds or their employees."). Therefore, parties to the lease contemplated VMI

---

**3.** In Texas, a third-party does not have a direct action under a contractual or extra-contractual theory of recovery against the tortfeasor's liability insurance carrier. *See Jones v. CGU Ins. Co.*, 78 S.W.3d 626, 629 (Tex.App.-Austin 2002, no pet.). Part of the reason for this rule is that the tortfeasor's interests are adverse to those of the third-party, and if the carrier owed a duty to the third-party, the carrier's duties to the tortfeasor would necessarily be compromised. *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 279–80 (Tex.1995). Analogously, an insurance broker who procures liability insurance for a tenant pursuant to a lease would not have a duty of professional care to the landlord whose interests may be adverse to the broker's client.

would obtain $1,000,000 in liability coverage that would benefit the landlord by providing indemnification for VMI if the hangar were damaged because of VMI's negligence.

However, considering all the possibilities for events that might trigger VMI's liability for damage to the hangar, it was not reasonably foreseeable to Millennium that a limitation of coverage under the general-liability policy for one specific type of causation would harm the landlord. Foreseeability of injury under these facts is significantly attenuated, if not remote. *See Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex.1991) ("[T]here are certain situations in which the happenstance of place and time is too attenuated from the defendant's conduct for liability to be imposed."). Furthermore, it is axiomatic that coverage under a comprehensive general-liability policy will be subject to exclusions and limitations, and in the absence of a special relationship, an insurance broker does not have a duty to disclose limitations to its client unless inclusion of the limitation renders the policy non-compliant with the coverage requested by the client. *See Choucroun v. Sol L. Wisenberg Ins. Agency–Life & Health Div., Inc.*, No. 01–03–00637–CV, 2004 WL 2823147, at *6 (Tex. App.-Houston [1st Dist.] Dec. 9, 2004, no pet.) (mem. op.); *Moore v. Whitney–Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.-San Antonio 1998, no pet.); *see also May*, 844 S.W.2d at 669–70 & n. 10.[4]

Nevertheless, even if it were foreseeable that the policy limitation would harm the landlord, foreseeability alone is not sufficient to justify imposition of a duty. *Kirwan*, 298 S.W.3d 618, 624 (citation omitted). As previously discussed, the nature of the relationship between the plaintiff and defendant is a significant consideration in determining the existence of a duty of care. *Peavy*, 89 S.W.3d at 34. Considering the relationship between the parties in this case, we hold Millennium does not owe a professional duty to WHA, a third-party with whom Millennium never communicated regarding insurance coverage. *See Hartman*, 946 S.W.2d at 550 (holding engineer who prepared erroneous plat did not owe duty to subsequent purchaser because of lack of privity, even though it was foreseeable purchaser would rely on plat). In sum, an insurance broker has limited duties under the common law, and the facts of this case do not support WHA's request that we broaden those duties. *See May*, 844 S.W.2d at 669 (broker has duty to client to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so); *Choucroun*, 2004 WL 2823147, at *6 (generally, broker has no duty to disclose to client policy coverage limitations); *Critchfield v. Smith*, 151 S.W.3d 225, 230 (Tex.App.-Tyler 2004, pet. denied) (generally, broker has no duty "to extend the insurance protection of his customer merely because the agent has knowledge of the need for additional insurance of that customer").

Accordingly, we hold Millennium did not owe a duty of professional care to WHA relative to the amount of liability insurance coverage available to indemnify VMI under the lease.[5] WHA's fourth issue is

4. Absent privity of contract, there was no "special relationship" between Millennium and WHA.

5. Our holding is limited to situations in which the third-party sues the broker for its alleged professional negligence in procuring request-ed coverage; we have not addressed situations in which the third-party accuses the broker of negligent misrepresentation. *See Ervin*, 234 S.W.3d at 176 ("A negligent misrepresentation claim is not the equivalent of a professional malpractice or negligence claim.").

overruled. Because we have affirmed one of the grounds upon which summary judgment was granted, we need not address WHA's remaining issues. *See Critical Health Connection, Inc. v. Tex. Workforce Comm'n,* 338 S.W.3d 758, 768 n. 9 (Tex. App.-Austin 2011, no pet.) (declining to consider ground presented in motion for summary judgment after affirming summary judgment on a separate ground).

### III. MILLENNIUM'S COUNTERCLAIM FOR SANCTIONS

In its cross-appeal, Millennium contends the trial court erred by granting summary judgment in favor of WHA relative to Millennium's counterclaim for sanctions. Specifically, Millennium argues the trial court erred by failing to conduct an evidentiary hearing on the counterclaim.

■ A trial court must hold an evidentiary hearing on a party's request for sanctions to make the necessary factual determinations. *R.M. Dudley Const. Co., Inc. v. Dawson,* 258 S.W.3d 694, 709 (Tex.App.-Waco 2008, pet. denied). However, when a party does not object to the trial court's failure to conduct an evidentiary hearing, error is waived. *See D Design Holdings, L.P. v. MMP Corp.,* 339 S.W.3d 195, 203 (Tex.App.-Dallas 2011, no pet.); *Dugas v. Dreyer,* No. 14–96–00336–CV, 2004 WL 438598, at *3 (Tex.App.-Houston [14th Dist.] Mar. 11, 2004, no pet.) (mem. op.).

WHA filed a motion for summary judgment in which it argued Millennium's request for sanctions should be denied as a matter of law. WHA set its motion for a hearing. Millennium filed a response in which it argued the merits of its request for sanctions; however, Millennium neither requested an evidentiary hearing nor complained that its request for sanctions was to be considered in a non-evidentiary summary-judgment hearing. By failing to object to the lack of an evidentiary hear-

ing, Millennium waived any error the trial court committed by failing to hold such hearing. *See D Design Holdings, L.P.,* 339 S.W.3d at 204; *Dugas,* 2004 WL 438598, at *3. Accordingly, Millennium's cross-appeal issue is overruled.

We affirm the trial court's judgment.