Filed 5/19/16  Thee Aguila v. ERDM CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THEE AGUILA INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ERDM, INC. et al., <br><br> Defendants and Respondents. | B263005 <br><br> (Los Angeles County <br> Super. Ct. No. VC063679) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas I. McKnew, Jr.  Affirmed.

Law Offices of Guinevere M. Malley and Guinevere M. Malley for Plaintiff and Appellant.

Century Law Group and Karen A. Larson for Defendants and Respondents.

# I.  INTRODUCTION

Plaintiff, Thee Aguila, Incorporated, appeals from a judgment entered in an unlawful detainer action following a bench trial.  Plaintiff filed an unlawful detainer action against defendants, ERDM, Incorporated, Edgar Fragoso, Santiago Acuna and Eva Meneses.  Plaintiff relied on a commercial lease between it and defendants.  Under the lease, defendants were required to maintain public liability insurance which includes a *cross-liability endorsement*.  We shall describe a cross-liability endorsement later in this opinion.  Plaintiff asserted defendants did not provide the required cross-liability coverage.  Plaintiff served a default notice indicating the lease would be terminated if the default was not cured within 30 days.  Defendants did not cure the default.  The trial court found defendants did not have the required insurance coverage.  But, the trial court did not find the breach merited forfeiture of the lease.  The trial court found in defendants' favor and against plaintiff on the unlawful detainer claim.  We affirm.

# II.  BACKGROUND

## A.  Plaintiff's Complaint and the Lease

On December 5, 2013, plaintiff filed an unlawful detainer action against defendants.  Plaintiff owns real property, which is used as a nightclub, located at 8825 East Washington Boulevard in Pico Rivera, California (the property).  Plaintiff and ERDM, Incorporated are California corporations.  ERDM, Incorporated, Mr. Fragoso, Mr. Acuna, and Ms. Meneses are tenants and parties to a lease agreement.

On May 1, 2000, the previous property owner, Jose G. Hernandez, Mr. Acuna and Mr. Fragoso entered into a commercial lease of the property.  The lease's term was from May 1, 2000 until April 30, 2015.  Paragraph 11, subparagraph (b) of the lease describes the requirements for liability insurance on the property:  "Tenant at its sole cost and expense shall maintain during the term of this Lease public liability insurance . . . and

2

property damage limits . . . , insuring against all liability of Tenant and its authorized representatives arising out of and in connection with Tenant's use or occupancy of the Premises [the property]. . . . Both Landlord and Tenant shall be named as additional insureds, and the policies shall contain cross-liability endorsements. Subject to review by Tenants insurer. [sic] If Tenant shall fail to procure and maintain such insurance the Landlord may, but shall not be required to, procure and maintain same at the expense of Tenant and the cost thereof, together with interest thereon . . . shall become due and payable as additional rental to Landlord . . . ." Paragraph 15, subparagraph (b) describes the lessor's remedies: "The Landlord shall have the following remedies if Tenant commits a default under this Lease. These remedies are not exclusive but are cumulative and in addition to any remedies now or hereafter allowed by law." Paragraph 32 describes what are covenants and conditions of the lease, "Each provision of this Lease performable by Tenant shall be deemed both a covenant and a condition."

Paragraph 15, subparagraph (a) provides how a default occurs: "The occurrence of any one or more of the following events shall constitute a default and breach of this Lease by Tenant: [¶] . . . [¶] (2) Failure to perform any other provision of this Lease is [sic] the failure to perform is not cured within thirty (30) days after written notice thereof has been given to Tenant by Landlord. If the default cannot reasonably be cured within said thirty (30) day period, Tenant shall not be in default under this Lease if Tenant commences to cure the default within the thirty (30) day period and diligently prosecutes the same to completion. [¶] . . . Notices given under this paragraph shall specify the alleged default and the applicable lease provisions, and shall demand that Tenant perform the provisions of this Lease . . . within the applicable period of time. No such notice shall be deemed a forfeiture or termination of this Lease unless Landlord so elects in the notice."

On February 1, 2006, plaintiff and defendants entered into a lease addendum. Plaintiff became the lessor. Defendants became the tenants. All other terms and conditions of the lease remained the same. On February 7, 2006, the parties entered into

3

another lease addendum.  The parties agreed to increase the occupancy of the property in exchange for a rental increase.  All other terms remained in effect.

Plaintiff alleges defendants failed to procure insurance which includes cross-liability coverage.  On October 30, 2013, plaintiff served defendants a default notice regarding the lack of cross-liability insurance.  Defendants were provided 30 days to cure the defect or be found in default.  The following appears in the October 30, 2013 default notice:  "Under Paragraph 15(a)(2) of the Lease you have 30 days to provide written proof that the subject policy has a cross-liability endorsement or doesn't exclude insured vs. insured claims.  You are currently in default under the terms of the Lease and [plaintiff] as [lessor] hereby terminates the Lease, pursuant to the terms of the Lease, if you fail to cure said default within the next 30 days."  Defendants did not provide proof they had secured cross-liability insurance coverage.  Plaintiff requests the following as relief:  attorney's fees; possession of the premises; forfeiture of the lease; the remainder of the rent owed for the lease term; and such other relief as proper.  The matter proceeded to a bench trial on July 3, 2014.


B.  Trial


1.  Cynthia Rodriguez's Testimony


Ms. Rodriguez served as defendants' insurance agent.  In September 2013, she helped provide insurance on the property for defendants.  Topa Insurance Company provided the insurance.  The Topa Insurance Company policy went into effect on September 6, 2013.  The Topa Insurance Company policy covered:  general liability; liquor liability; and assault and battery.  Ms. Rodriguez e-mailed the Topa Insurance Company policy to Henry Aguila, plaintiff's owner.  Mr. Aguila sent a responsive e-mail inquiring whether the Topa Insurance Company policy provided insured versus insured exclusion, also known as a cross-suit or cross-liability exclusion.  The Topa Insurance Company policy did have cross-liability coverage.  Ms. Rodriguez informed Mr. Aguila

4

she would attempt to acquire a cross-liability endorsement on the Topa Insurance Company policy.

On September 23, 2013, Topa Insurance Company notified Ms. Rodriguez it would cancel the insurance. The Topa Insurance Company policy was cancelled in November 2013. Ms. Rodriguez later acquired another policy through Golden Bear Insurance Company. The Golden Bear Insurance Company policy was effective November 18, 2013. Ms. Rodriguez could not identify a provision of the Golden Bear Insurance Company policy that specifically excluded cross-liability coverage. Golden Bear Insurance Company sent notice to Ms. Rodriguez that it was cancelling the policy sometime in November or December 2013. The Golden Bear Insurance Company policy was subsequently cancelled on January 23, 2014. Ms. Rodriguez did not send information regarding the Golden Bear Insurance Company policy to Mr. Aguila.

2. Charles Wright's Testimony

Mr. Wright was an insurance broker for defendants. He helped to broker liability insurance for the property. Mr. Wright helped defendants obtain liability insurance from Navigators Specialty Insurance Company. The Navigators Specialty Insurance Company policy provided for coverage between August 30 through September 9, 2013. Mr. Acuna cancelled the Navigators Specialty Insurance Company because Ms. Rodriguez obtained a cheaper policy from Topa Insurance Company. The Navigators Specialty Insurance Company did include a cross-suit exclusion, but only between named insureds. Mr. Wright classified plaintiff as an additional insured, not a named insured.

Mr. Wright became defendants' insurance broker again in January 25, 2014. Mr. Wright helped defendants acquire insurance through the Kinsale Insurance Company. The Kinsale Insurance Company policy was in effect at the time of trial. The Kinsale Insurance Company policy excluded coverage for cross-suits between the lessor and a tenant.

5

### 3. Marjorie Segale's Testimony

Ms. Segale, an insurance agent, broker, consultant and instructor, testified on plaintiff's behalf involving commercial insurance policies. She explained that a named insured was the policyholder on the insurance. The named insured paid the premium and received the refunds. An additional insured is covered under the policy. Ms. Segale testified cross-liability coverage protects an insured against claims brought by another insured under the same policy. Standard commercial general liability policies covered cross-suits. Ms. Segale testified the Navigators Specialty Insurance Company policy would not exclude a lawsuit between a lessor and a tenant. The Golden Bear Insurance Company policy did not exclude cross-suits. The Kinsale Insurance Company policy did have an insured versus insured exclusion.

### 4. Mr. Fragoso's Testimony

Mr. Fragoso received the 30-day notice of default from Mr. Aguila. He informed his insurance brokers sometime in November 2013 of the issue. Ms. Rodriguez and Mr. Wright both said to Mr. Fragoso that it was almost impossible to secure cross-liability coverage. The difficulty in securing cross-liability coverage arose because Mr. Aguila had made several insurance claims. Mr. Fragoso relied on his insurance broker to handle the insurance matter. Mr. Fragoso did not correspond with Mr. Aguila in any manner regarding the 30-day notice of default. Mr. Fragoso did not know there was an issue until Mr. Aguila served the unlawful detainer action.

### 5. Mr. Aguila's Testimony

On October 30, 2013, Mr. Aguila mailed a 30-day notice regarding lack of cross-liability coverage to defendants. Mr. Aguila never received proof a policy providing cross-liability coverage during this 30-day notice period. Mr. Aguila never received a

6

copy of the Golden Bear Insurance Company policy.  Mr. Aguila would not have filed the unlawful detainer action if defendants provided the Golden Bear Insurance Company policy to him.

Mr. Aguila did not receive a copy of the Topa Insurance Company policy until January 2014.  Ms. Rodriguez never sent Mr. Aguila a copy of the Topa Insurance Company policy.  Ms. Rodriguez did send Mr. Aguila a December 27, 2013 e-mail which contained the certificate of liability insurance and a casualty department binder.  That information indicated Topa Insurance Company policy excluded cross-liability coverage.  Mr. Aguila was not notified Topa Insurance Company policy had cancelled its insurance policy.

## C.  Statement of Decision and Judgment

On September 8, 2014, the trial court issued its statement of decision.  The trial court found, "[T]he tenants did not have the required coverage during part of the lease term nor at time of trial nor during the time the 30 days cure notice was in effect."  But the trial court refused to find a forfeiture:  "Both sides rely on the old case of Knight v. Black (1912) 19 Cal.App. 518.  This case does control the outcome of this case.  In Knight, supra, the court said:  '<u>Ordinarily</u>' to avoid forfeiture due to breach of terms and provisions contained in a lease, the language 'shall be construed as covenants when it <u>can be reasonably done</u>, but a covenant instead of a condition will never be implied contrary to the <u>clear</u> intent of the parties.'  (Underlining added for emphasis).  In Knight, supra, pages 527-528, the court further stated, 'waste, non-repair or non-insurance' are conditions and do not excuse a forfeiture.  [¶]  This case is far different than Knight, supra, as there is a clear remedy available to landlord if tenant fails to acquire cross-liability insurance.  Although landlord need not obtain the coverage and charge it back to tenants as rent, such option is specifically expressed and available.  The court will interpret the lease most favorable to tenants to avoid forfeiture.  The lease provides the sole remedy available to landlord should the tenants for whatever reason fail to provide

7

cross-liability coverage. The court deems this to be a reasonable interpretation of paragraph 11. Therefore, the pertinent language is deemed to be a covenant." The trial court determined defendants were the prevailing party. Plaintiff filed objections to the trial court's statement of decision. The trial court overruled plaintiff's objections and adopted its statement of decision as its final ruling.

### D. Plaintiff's New Trial Motion

On December 8, 2014, plaintiff filed a new trial motion. Plaintiff asserted there was newly discovered evidence that could not be secured prior to trial. Plaintiff relied on Mr. Aguila's declaration. After the trial completed, Mr. Wright, on defendant's behalf was able to obtain insurance with cross-liability coverage. Plaintiff also argued the trial court's ruling was unsupported by the law. Plaintiff requested the matter be converted to a regular civil action for contract breach. Mr. Wright filed a declaration stating that after trial cross-liability coverage was secured and it applies for the balance of the lease term. During the trial, such coverage was unavailable. Plaintiff's new trial motion was denied and judgment was entered in defendant's favor on February 3, 2015. This appeal followed.

### III. DISCUSSION

### A. Key Legal Standards

We review the trial court's findings of fact, whether express or implied, to determine if they are supported by substantial evidence. (*Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1425; *SFPP, L.P. v. Burlington Northern & Santa Fe Railway Co.* (2004) 121 Cal.App.4th 452, 462.) We review the trial court's legal conclusions de novo. (*Palm Property Investments, LLC v. Yadegar, supra,* 194 Cal.App.4th at pp. 1425-1426; *ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133

8

Cal.App.4th 1257, 1266.) Code of Civil Procedure, section 1161 subdivision (3) defines when the tenant is guilty of unlawful detainer: "When he or she continues in possession, in person . . . , after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held, including any covenant not to assign or sublet, than the one for the payment of rent, and three days' notice, in writing, requiring the performance of such conditions or covenants, or the possession of the property, shall have been served upon him or her . . . . Within three days after the service of the notice, the tenant . . . may perform the conditions or covenants of the lease or pay the stipulated rent, as the case may be, and thereby save the lease from forfeiture . . . ." The lease provides for a 30-day notice period. At the time of trial, defendants were in possession of the property.

However, the breach of a lease's condition or covenant may be insufficient to permit a plaintiff to secure termination of a lease and restitution of the premises. The breach of the lease term must be material: "Plaintiff argues in its opening brief that '[t]here is nothing in CCP 1161(3) that requires that the breach be substantial before a tenant can be guilty of unlawful detainer. . . .' Although not expressly set forth in Code of Civil Procedure section 1161(3), this requirement is set forth in case law. (*Keating v. Preston* (1940) 42 Cal.App.2d 110, 115; *Feder v. Wreden Packing & Provision Co.* (1928) 89 Cal.App. 665, 673.) Whether a particular breach will give plaintiff landlord the right to declare a forfeiture is based on whether the breach is material. '"The law sensibly recognizes that although every instance of noncompliance with a contract's terms constitutes a breach, not every breach justifies treating the contract as terminated. [Citations.] Following the lead of the Restatements of Contracts, California courts allow termination only if the breach can be classified as 'material,' 'substantial,' or 'total.' [Citations.]"' (*Superior Motels, Inc. v. Rinn Motor Hotels, Inc., supra,* 195 Cal.App.3d at p. 1051.)" (*NIVO 1 LLC v. Antunez* (2013) 217 Cal. App. 4th Supp. 1, 5; *Boston LLC v. Juarez* (2016) 245 Cal.App.4th 75, 82.)

9

## B. Cross-Liability Coverage

Cross-liability insurance provides coverage for an insured when sued by another insured under the same policy. A Texas appellate court described such coverage: "Under the lease, [Volume Millwork, Inc.] was required to obtain a policy in which the landlord was named as an additional insured with a cross-liability endorsement. A cross-liability endorsement provides liability coverage when an additional insured sues the named insured for negligence even though they are both covered by the same policy. See Rod D. Margo, *Aspects of Insurance in Aviation Finance*, 62 J. Air L. & Com. 423, 457 (1996) ('A cross-liability clause is a provision in a liability policy under which it is agreed that the inclusion of more than one insured in the policy will not preclude the right of the original insured to recover for claims made against the original insured by additional insureds or their employees.'). Therefore, parties to the lease contemplated [[Volume Millwork, Inc.] ] would obtain $1,000,000 in liability coverage that would benefit the landlord by providing indemnification for [[Volume Millwork, Inc.] if the hangar were damaged because of [Volume Millwork, Inc.'s] negligence." (*West Houston Airport, Inc. v. Millennium Ins. Agency* (Tex.App. 2011) 349 S.W.3d 748, 753-754; see *City of Santa Monica v. Royal Indem. Co.* (1958) 157 Cal.App.2d 50, 53, 56.)

## C. Breach of Lease

As noted, the trial court found, "[T]he tenants did not have the required coverage during part of the lease term nor at time of trial nor during the time the 30 days cure notice was in effect." The trial court thus implicitly found defendants had breached the lease. We defer to the trial court's resolution of factual issues and its credibility assessment. (*Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175; *Maslow v. Maslow* (1953) 117 Cal.App.2d 237, 243, disapproved on another point in *Liodas v. Shadi* (1977) 19 Cal.3d 278.) Substantial evidence supports the trial court's finding. The Topa Insurance Company policy, which was in effect when plaintiff served the 30-day

10

default notice of default, excluded cross-liability coverage. The Golden Bear Insurance Company policy insurance, which purportedly did cover cross-liability, was cancelled shortly after it was obtained. Neither defendants nor their insurance broker responded to plaintiff's 30-day notice of default. The Kinsale Insurance Company policy, which was in effect at the time of trial, specifically excluded cross-liability coverage between landlord and tenant.

Defendants assert the term "[s]ubject to review by Tenants['] insurer" absolved them of responsibility for obtaining insurance with cross-liability coverage. Defendants cite to testimony which suggested they could rely solely upon their insurance broker to obtain the proper insurance. The language "[s]ubject to review by Tenants['] insurer" does not excuse the duty to secure cross-liability coverage. Insurance brokers are not insurers. Defendants present no legal argument which would permit us to reverse the trial court's finding they breached the lease.


## D. Materiality of the Breach


Plaintiff argues the trial court erred in finding no forfeiture of the lease occurred. Plaintiff reasons the lease's express terms provide it may declare a forfeiture if defendants breached a condition or covenant. We first address whether procuring insurance with cross-liability coverage is a condition or covenant. Whether the provision is a condition or a covenant is immaterial. Paragraph 32 of the lease provides, "Each provision of this Lease performable by Tenant shall be deemed both a covenant and a condition." Also, section 1161, subdivision (3) permits a judgment in unlawful detainer be entered when a tenant is in violation of "conditions or covenants" of a lease. The unlawful detainer statute does not distinguish between conditions and covenants.

We turn now to the question of whether the trial court could find the breach of the condition or covenant to provide cross-liability coverage to be not material. As noted, a trial court retains discretion to refuse to issue a judgment in unlawful detainer if the breach of the covenant or condition is not material, substantial or total. (*Superior Motels,*

11

*Inc. v. Rinn Motor Hotels, Inc., supra,* 195 Cal.App.3d at p. 1051; *NIVO 1 LLC v. Antunez, supra,* 217 Cal.App.4th Supp. at p. 5.) Generally, the materiality of a breach is a factual question. (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277; *Superior Motels, Inc. v. Rinn Motor Hotels, Inc., supra,* 195 Cal.App.3d at pp. 1051-1052.) Whether material breach of a contract has occurred is reviewed for substantial evidence. (See *Porter v. Arthur Murray, Inc.* (1967) 249 Cal.App.2d 410, 423; *Asso. Lathing etc. Co. v. Louis C. Dunn, Inc.* (1955) 135 Cal.App.2d 40, 51.)

Here, the trial court found the breach was not material. Substantial evidence supports that conclusion. Defendants had maintained liability insurance and attempted, albeit unsuccessfully, to secure cross-liability coverage. Further, the lease provided plaintiff could secure the coverage and then pass the costs on to defendants. Under these circumstances, the trial court could reasonably find that the breach was not material, substantial or total. The trial court could reasonably therefore enter judgment in defendant's favor.

## E. Failure to Make a Finding in the Statement of Decision.

Plaintiff contends, "The trial court fails to make a finding in regards to the uncontradicted evidence presented that appellant did attempt to exercise this remedy but respondent refused to provide appellant with the necessary documents." Plaintiff filed objections to the trial court's statement of decision. In those objections, plaintiff argued that it was never provided with the necessary documents so that it could secure cross-liability coverage. Plaintiff has failed to demonstrate the failure to address this collateral issue permits reversal. (*Central Valley General Hosp. v. Smith* (2008) 162 Cal.App.4th 501, 513; *In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 736, fn. 14.)

F.  New Trial Motion

Plaintiff argues the trial court erroneously denied its new trial motion premised on newly discovered evidence and errors at law.  We review this contention for an abuse of discretion.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859; *Wall Street Network Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1176.)  In large part, plaintiff reargued the issues that had previously been adjudicated by the trial court.  As noted, Mr. Aguila and Mr. Wright filed declarations which indicated that after trial defendants secured cross-liability coverage for the lease term's duration.  Without abusing its discretion, the trial court could rule Mr. Aguila's and Mr. Wright's declarations added nothing to the issues it had previously decided.  No abuse of discretion occurred.

IV.  DISPOSITION

The February 3, 2015 judgment is affirmed.  Defendants, ERDM, Incorporated, Santiago Acuna, Edgar Fragoso, and Eva Meneses, shall recover their costs incurred on appeal from plaintiff, Thee Aguila, Incorporated.  Any request for attorney fees incurred on appeal should be pursued pursuant to California Rules of Court, rules 3.1702 and 8.278(d)(2).

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


We concur:


BAKER, J.


KUMAR, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.