**Opinion issued January 23, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-01107-CV

————————————

**ZURICH AMERICAN INSURANCE COMPANY, AS SUBROGEE OF TENARIS GLOBAL SERVICES (U.S.A.) CORPORATION, Appellant**

**V.**

**COASTAL CARGO OF TEXAS, INC., Appellee**

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2015-48186

## O P I N I O N

Zurich American Insurance Company, as subrogee of Tenaris Global Services (U.S.A.) Corporation, appeals from a take-nothing judgment. Zurich contends that the trial court erred in instructing the jury as to what it had to find to hold Coastal Cargo of Texas, Inc. liable under a contractual risk-of-loss provision.

We reverse the trial court's judgment and remand for a new trial.

## BACKGROUND

Tenaris sold a large quantity of steel piping to Anadarko Petroleum Company for use in Louisiana. The piping was made in northern Italy and then shipped about 500 miles overland to an Italian port, where it was then loaded onto a vessel for transport to the Port of Houston. Tenaris contracted with Coastal to unload the piping from this vessel at the Port of Houston and transfer the piping to a barge for delivery in Louisiana. When the piping arrived in Louisiana, Anadarko rejected almost 40 percent of it due to damage sustained in transit. Tenaris repaired the damaged piping and Zurich paid Tenaris about $393,000 under a cargo insurance policy. Zurich then sued Coastal. Zurich alleged that the piping was damaged when it was in Coastal's custody and that the risk-of-loss provision in the contract between Tenaris and Coastal made Coastal liable for the damaged piping and Zurich's payment.

The contract's risk-of-loss provision provided as follows:

*Section 7.2   Risk of Loss*

Contractor shall bear the risk of loss, destruction or damage to the Goods: (i) from the moment when such Goods are received by Contractor at the Yard or at any other place, from any member of Tenaris Group and/or from a transport company and/or from Customer and/or from any Third Party; (ii) during the time that Goods are under Contractor's custody or control at the Yard or at any other place; and (iii) until such Goods leave Contractor's physical custody. Contractor shall take such steps reasonably necessary to be sure that Goods can at all times be identified as belonging to Tenaris. The remainder of this section notwithstanding, Contractor shall not bear the risk of loss, destruction or damage to Goods

2

that result from causes that are outside the control of Contractor, including but not limited to, force majeure events.

The parties disputed the scope of the risk-of-loss provision. Zurich contended that the provision made Coastal responsible for any damage to the piping while it was in Coastal's custody so long as the cause of damage was not outside of Coastal's control. Coastal contended that proof that the piping was damaged in its custody was necessary but not sufficient. Coastal argued that it could not be held liable unless Zurich also proved that Coastal had breached one of several other contractual provisions. In support, Coastal relied on the following four provisions:

*Section 3.1  Performance of Services*

Contractor shall carry out all of its obligations under the Agreement and shall perform the Services using qualified and competent personnel in a lawful, proficient, timely and efficient manner.

\* \* \*

*Section 3.3. Provision of Necessary Resources for Performance of Services*

Contractor shall provide all management, supervision, personnel, materials, equipment, plant, consumables, facilities, supplies and all other items and resources, whether of a temporary or permanent nature, so far as the necessity for providing the same is specified in or is reasonably to be expected from the Agreement. Materials, equipment or parts thereof and any other items provided by Contractor for the provision of Services, for which there is no detailed specification included in the Agreement shall be of good quality and workmanship and consistent with applicable standards.

\* \* \*

*Section 6.1  Scope of Warranty*

Contractor Group warrants that Services shall: (i) be performed in full compliance with this Agreement; (ii) be free from defects and deficiencies; and (iii) be correct and appropriate for purposes contemplated in this Agreement.

* * *

*Section 9.2  Compliance with Operative Practices*

In performance of the work under this agreement Contractor shall comply with normal, reasonable and safe practices.

Based on these four provisions, Coastal argued that Zurich had to prove that Coastal had failed to employ competent personnel, use equipment that met industry standards, transfer cargo properly, or comply with customary practices in transferring cargo in addition to proving that the cargo was damaged while in Coastal's custody to establish liability for damages under the contract.

The trial court agreed with Coastal. In the breach-of-contract question that it submitted to the jury, the trial court instructed that:

Coastal failed to comply with the agreement if you find that the damage to the pipe was sustained:

(a) while the pipe was in Coastal's custody and from causes within Coastal's control, and

(b) that Coastal failed to use qualified and competent personnel; or that Coastal failed to use equipment of good quality and workmanship and consistent with applicable industry standards; or that Coastal failed to perform its stevedoring correctly and appropriately for the purposes contemplated; or that Coastal failed

4

to comply with normal, reasonable and safe operative practices to cause damage to the pipe.

The jury unanimously found that Coastal did not breach the contract, and the trial court entered a take-nothing judgment from which Zurich appeals.

## DISCUSSION

### *Waiver and Motion to Strike*

Coastal contends that Zurich waived any error by failing to specify error in the jury charge as an appellate issue and by failing to adequately brief charge error. Coastal also has moved to strike Zurich's reply in part on the ground that Zurich did not address the issue of harm in its opening brief and thus cannot do so in reply.

Zurich's brief is not a model of precision, but it leaves no doubt that Zurich's complaint concerns the trial court's jury instruction as to what it had to prove to show a breach of the risk-of-loss provision. Zurich's brief also makes its position as to harmful error clear enough; Zurich contends that it lost at trial because the charge required Zurich to prove something the risk-of-loss provision does not require.

We therefore reject Coastal's waiver arguments and deny its motion to strike.

### *Contract Interpretation*

Zurich contends that the trial court misinterpreted the contract and erred by including this erroneous interpretation in the jury charge. Zurich maintains that the risk-of-loss provision requires it to prove that the cargo was damaged in Coastal's custody from causes within Coastal's control and nothing more. Coastal responds

5

that the trial court properly interpreted the contract as a whole, rather than looking exclusively to its risk-of-loss provision, to determine Coastal's potential liability.

*Standard of Review*

Zurich and Coastal agree that the contract is unambiguous. The interpretation of an unambiguous contract is a question of law, which we review de novo. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015). The parties' intent, as expressed in the contract's language, is controlling. *Plains Expl. & Prod. Co. v. Torch Energy Advisors*, 473 S.W.3d 296, 305 (Tex. 2015). Absent ambiguity, extrinsic evidence is inadmissible to show a meaning different from the contract's plain language. *Anglo–Dutch Petrol. Int'l v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011). We consider the contract's language as a whole, trying to give effect to all of its terms so that none are made meaningless. *Seagull Energy E & P v. Eland Energy*, 207 S.W.3d 342, 345 (Tex. 2006). Thus, we do not read contractual provisions in isolation from one another. *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006) (per curiam). Nor do we consider terms that favor one party's interpretation of the contract and disregard the rest. *City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005). Unless the contract shows that it uses a term in some other sense, we accord the term its plain, ordinary, and generally accepted meaning. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

*Analysis*

The trial court erred in interpreting the contract to require that Zurich prove both that the cargo was damaged while in Coastal's custody by causes within its control and that Coastal breached a requirement imposed by one of several other contractual provisions. The risk-of-loss provision provides that Coastal bears the risk of loss, destruction, or damage to cargo in its custody unless the loss, destruction, or damage results from causes outside of Coastal's control. The risk-of-loss provision does not refer to any other contractual provision or limit its application to any particular circumstances addressed by the other provisions of the contract. Under this provision, Zurich had to prove that the cargo was in Coastal's custody and that whatever caused the damage was within Coastal's control and no more.

Coastal contends that this interpretation disregards four other provisions that address the employment of competent personnel, use of equipment that meets industry standards, proper transfer of cargo, and compliance with customary practices. We disagree. These provisions identify matters that are within Coastal's control, but they are not exhaustive. The risk-of-loss provision imposes liability for damage caused by anything within Coastal's control, not just breaches of these four provisions. Coastal could perform under each of these four provisions, but nonetheless remain liable if cargo was damaged in its custody by some other cause

7

within its control. The trial court's interpretation therefore limited Coastal's potential liability inconsistent with the contract's plain language.

### *Jury Charge Error*

Relying on *Crown Life Insurance Company v. Casteel*, 22 S.W.3d 378 (Tex. 2000), and its progeny, Zurich contends that the trial court's jury instruction prevents it from properly presenting its appeal. Zurich reasons that under the trial court's charge, the jury could have rendered a defense verdict on two distinct bases: it could have found under subpart (a) of the breach instruction that the piping was not damaged while in Coastal's custody by causes under its control or the jury could have found that Coastal did not commit any of the separate and distinct contractual breaches identified in subpart (b) of the breach instruction. Because there is no way to tell which basis the jury accepted and subpart (b) is erroneous, Zurich argues that reversal and remand for a new trial is required. *See id.* at 388–90.

### *Standard of Review*

Under *Casteel* and its progeny, when a trial court submits a single broad-form liability question incorporating multiple theories of liability, some of which are invalid and therefore cannot support a finding of liability, it errs. *Benge v. Williams*, 548 S.W.3d 466, 475 (Tex. 2018). The error is harmful and requires a new trial if the appellate court cannot determine whether the jury based its verdict on an invalid theory. *Id.* Though *Casteel* concerned the broad-form submission of multiple

theories of liability, its harmful-error rule likewise applies when the trial court submits a broad-form question as to a single theory that allows a finding of liability based on evidence that cannot support recovery as a matter of law. *Id.* at 475–76; *see also Brannan Paving GP v. Pavement Markings, Inc.*, 446 S.W.3d 14, 23–25 (Tex. App.—Corpus Christi 2013, pet. denied) (broad-form submission that includes invalid affirmative defense within the liability question subject to *Casteel* rule).

*Analysis*

The rules of procedure require broad-form submission when feasible. Tex. R. Civ. P. 277. But this directive must be read in light of *Casteel* and its progeny, which call for more granular submission of the issues when there are multiple theories of liability, distinct bases for liability asserted under a single theory of liability, or more than one affirmative defense that could defeat liability. *See Benge*, 548 S.W.3d at 475–76; *Casteel*, 22 S.W.3d at 389–90; *Brannan*, 446 S.W.3d at 23–25. The question then is whether broad-form submission was feasible in this case.

The trial court submitted a broad-form liability question that allowed the jury to find for Zurich if and only if the jury determined that (1) the piping was damaged while in Coastal's custody by causes within its control; and (2) Coastal did not use competent personnel, use equipment that met industry standards, perform its stevedoring correctly, or comply with normal, reasonable, and safe practices. The second prerequisite to liability under this question is invalid because the contract

9

does not limit Coastal's risk-of-loss liability in this manner. A jury finding in Coastal's favor on this basis therefore would be improper as a matter of law.

The jury found for Coastal on Zurich's risk-of-loss claim. But there is no way to determine whether the jury did so on a contractually valid basis—because it decided that Zurich did not prove that the piping was damaged for reasons within Coastal's control—or a contractually invalid basis—because Zurich did not prove that Coastal failed to fulfill its obligations with respect to personnel, equipment, stevedoring, or reasonable practices. While *Casteel* issues typically arise when an appellate court cannot determine whether the jury found liability on an improper basis, they are equally applicable when, as here, broad-form submission prevents us from ascertaining whether the jury rendered a defense verdict on an improper basis. *See Brannan*, 446 S.W.3d at 23–25; *cf. Bed, Bath & Beyond v. Urista*, 211 S.W.3d 753, 756–57 (Tex. 2006) (submission of erroneous inferential rebuttal issue instruction doesn't require reversal and new trial because this type of error doesn't prevent appellate court from determining if jury's verdict rests on invalid basis).

The Supreme Court has interpreted Rule 277's directive to submit broad-form questions when feasible as requiring broad-form submission in every instance that it is capable of being done. *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012). Rule 277, however, was last amended in 1988, twelve years before *Casteel*. We do not doubt that the charge in this case resulted from the trial court's and parties' good-

10

faith efforts to comply with the Court's direction on broad-form submission. But broad-form submission was not feasible in this case, given the parties' disagreement as to whether the contract required Zurich to prove more than one distinct element to establish Coastal's liability for the loss. On this record, we have no choice but to reverse and remand for retrial with a jury charge correctly interpreting the contract.

**CONCLUSION**

We reverse the trial court's judgment and remand for a new trial.


Gordon Goodman
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.